Maria **AGUSHI**, Plaintiff–Appellant,

v.

Wendy **DUERR** and Gary Zellmer, Defendants–Appellees.

No. 98–1110.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1999.

Decided Nov. 4, 1999.

Robert J. Gringras, Madison, WI, Eric J. Haag (argued), Gringras & Cates, Madison, WI, for plaintiff–appellant.

John W. Markson (argued), Bell, Metzner, Gierhart & Moore, Madison, WI, for defendants-appellees.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

During the summer of 1995, officials at the Reedsburg, Wisconsin police department were investigating Hamit Agushi and his wife, Maria Agushi, suspecting Hamit of abusing his teen-age daughter and Maria of failing to prevent the abuse. On August 17, 1995, when police officers Wendy Duerr and Gary Zellmer visited the Agushi home to execute a search warrant a confrontation arose with Mrs. Agushi—the exact cause and nature is in dispute. As a result of this confrontation, Mrs. Agushi filed an action under 42 U.S.C. § 1983 against the two officers, claiming that Duerr and Zellmer violated her Fourth Amendment rights by using excessive force when they arrested her at her home. The case was tried before a jury and the jury returned a verdict finding that the officers did not use excessive force. The trial judge denied Mrs. Agushi's motion for a new trial. On appeal, Mrs. Agushi argues that the district court abused its discretion in admitting testimony regarding her husband's physical abuse of their daughter Olivia, and in refusing to allow Olivia to testify that she heard Officer Duerr state that she wanted to "ruin" both of Olivia's parents. We affirm.

## I. BACKGROUND

On August 17, 1995, at 6:03 p.m., Officers Duerr and Zellmer rang the doorbell at the Agushi family residence and Mrs. Agushi answered. At trial, Mrs. Agushi and the defendants offered different versions of what transpired during the ensuing eighteen minutes. Mrs. Agushi testified that when she answered the door, the officers immediately and without explanation dragged her through the vestibule and into the living room, where they beat her with their fists, kicked her, pushed her to the ground and repeatedly jabbed her with police batons. She also alleged that they stated "this is America" (she is a German-speaking Polish national), and that they had been "wanting to do this" for a long time.

The defendants testified that they neither dragged nor forced Mrs. Agushi into the living room much less made the statements she attributed to them. Rather, they recounted that, when she answered the door, they informed her that they were there to execute a search warrant, and that she refused to allow them entry and went so far as to block the doorway with her outstretched arms. After repeatedly warning Mrs. Agushi that her continued obstruction would result in arrest and in view of her continued refusal to comply with their directions, the officers placed her under arrest. Each of the officers took hold of one of her arms in an attempt to place them behind her back to handcuff her. They testified that she violently resisted; screaming, scratching, kicking, ultimately kicking a table in the vestibule with enough force to knock over and shatter the lamp upon it. They testified further that even after Mrs. Agushi's hands were cuffed behind her back, she still continued to resist. Because of her continued resistance, the officers called for backup assistance.

Shortly thereafter, one of the backup officers arrived and transported Mrs. Agushi to a police station, where she was booked on a charge of obstructing an officer.[1] Mrs. Agushi was placed in a holding cell until the following afternoon when she was taken before a judge for a bail hear-

---

1. According to the booking form, Mrs. Agushi was charged both with obstructing an officer and with failing to prevent bodily harm to a minor; the defendants testified that the second charge was added later in the evening, after Officer Duerr returned from the Agushi residence.

ing. At the hearing, the public defender noticed bruises on her arms and legs, and after she was released on bail, Mrs. Agushi went to the emergency room, where, at a doctor's initiative, thirty photographs were taken of bruises on her back and thighs. Sixteen months later, Mrs. Agushi filed suit in federal court alleging the use of excessive force at the time of the arrest.

Before the trial commenced, the defendant–officers informed the court that they intended to introduce testimony that a few days before the August 17 incident, Hamit Agushi had punished his daughter Olivia (who had run away from home on several occasions during the summer) by physically assaulting her with a vacuum cleaner hose. Before trial, Mrs. Agushi's counsel filed a motion in limine objecting to the introduction of any evidence regarding Hamit's beating of Olivia. The court ruled that, barring proper foundation, no evidence could be introduced pertaining to child-abuse.

During the two-day jury trial, the majority of the testimony focused on the conflicting accounts of the incident at the Agushi residence during the search warrant entry and the cause of the bruises on Mrs. Agushi the next day. Both of the officer-defendants testified that they never observed bruises on her at the time of the arrest. In their depositions, they stated that they could not possibly have caused the bruises; at the trial, they stated that if she was bruised it, in all probability, resulted from Mrs. Agushi's active resistance to their carrying out their search warrant responsibilities and from the force they had to exert in controlling and restraining her as they placed her under arrest.

By agreement of the parties and with the court's approval, Mrs. Agushi read a narrative summary to the jury of the deposition testimony of Larry Danaher, captain of Special Operations for the Lafayette, Indiana Police Department and an expert in forensic pathology. Captain Danaher stated that, based on his review of Mrs. Agushi's bruises depicted in photographs taken four days after the arrest, her bruises had "defensive tactics signature marks," located in areas where police officers are "trained to strike." If it could be established that the defendants had in fact caused the bruises, he continued, they would have used excessive force. Other expert witnesses, however (some called by the defendants and others examined adversely by Mrs. Agushi), believed that such bruises might very easily have resulted—without use of excessive force—from a struggle with an individual resisting arrest. The backup police officers testified that when they arrived at the Agushi residence a few minutes after they received a call for assistance they observed that the defendants were leading Mrs. Agushi from the house and she was still resisting, even while handcuffed. Mrs. Agushi's neighbor testified that she observed that when Mrs. Agushi was being escorted to the police car she was "thrashing, yelling and screaming."

Again by agreement of the parties, Mrs. Agushi read the jury another narrative of an absent witness, this time a summary of the deposition testimony of Dr. Gregory Schmunk, an expert in forensic pathology. Dr. Schmunk stated that all of Mrs. Agushi's bruises, judging from the photographs, appeared to have been caused at the same time, and that "based on [his] experience and training and upon [his] review of this case it is [his] opinion to a reasonable degree of medical certainty that the bruises depicted in the photographs ... are consistent with the alleged assault on Mrs. Agushi at the time of her arrest." Dr. Schmunk disagreed with the deposition testimony of one of the defendants' witnesses, Dr. Thomas Meyer, an expert in emergency medicine, who had stated that, although he could not be certain, he believed that some of the bruises might have been caused by blows received up to three days before Mrs. Agushi's arrest, thus it could have been Mr. Agushi that caused some of the bruises.

At this point, the court allowed the defendants, over Mrs. Agushi's objection, to summarize other remarks made by Dr. Schmunk. According to the defendants' summary, Dr. Schmunk stated that he did not believe that Mrs. Agushi's bruises could have resulted from domestic abuse "because of the lack of bruising to the head and face," but did admit that "[i]f there is an incident of abuse directed toward a teenager within a household then the likelihood of abuse towards a spouse would increase." Until now, the jury had not heard any testimony dealing with the circumstances surrounding the authorities' reason for obtaining a warrant to search the Agushi residence. But based on the defendants' summary of Dr. Schmunk's statements read to the jury, the court, over Mrs. Agushi's objection, ruled that a proper foundation had now been laid and thus the defendants could now introduce testimony concerning Hamit Agushi's abuse of his daughter. During the second day of trial, the defendants showed the jury a photograph that the police had taken of the bruises on Olivia Agushi's thigh when she visited the police station on August 14, to complain about her father's beating of her. From further testimony, the jury learned not only that Hamit was suspected of abusing Olivia, but also that Officer Duerr applied for an arrest warrant for Mrs. Agushi (already confined in the holding cell) for failure to prevent bodily harm to a child.

On cross-examination of Officer Duerr, plaintiff's counsel elicited that Duerr admitted at her deposition that she was "disturbed with Mrs. Agushi for failing to prevent this child abuse" even before she went to the Agushi residence. Duerr also acknowledged that she had no reason to believe that Hamit Agushi was abusing his wife. Throughout the second day of trial, the parties continued to elicit conflicting testimony from various witnesses regarding the alleged child abuse and the confrontation at the residence. For example, Tammy Meyer, another police officer, testified that while investigating the possibility of child abuse, she had met with Mrs. Agushi, who had stated that she believed the police were interfering with a family matter and that "no officer [could] tell her not to spank her children."

Plaintiff's counsel attempted to elicit testimony from Mrs. Agushi's daughter, Olivia, regarding a conversation Olivia allegedly overheard at the police department a few days before her (Mrs. Agushi's) arrest. Namely, Olivia claimed to have overheard Officer Duerr saying that she was going to "ruin" Hamit and Maria Agushi. The district court, upon objection, refused to admit this testimony, on the basis that the statement would be improper evidence of a prior bad act under Fed.R.Evid. 404(b); that the statement would be improper evidence of an instance of conduct for the purpose of attacking a witness's credibility under Fed.R.Evid. 608(b); and that the statement would be irrelevant in violation of Fed.R.Evid. 402.

During closing arguments, defense counsel reemphasized the officers' testimony that Mrs. Agushi's bruises might very well have been caused by her own resistance to allowing the police to enter the house to execute the search warrant and her subsequent thrashing around, and kicking during the officers attempts to restrain and arrest her. Defense counsel, during final argument, also focused on Hamit's beating of Olivia, and pointed out that none of the medical experts testified that they could "rule out the possibility that the bruises on Mrs. Agushi's body were the product of domestic abuse."

The jury concluded that neither Duerr nor Zellmer used excessive force when executing the search warrant. Mrs. Agushi moved for a new trial pursuant to Federal Rules of Civil Procedure 59, arguing that the trial was unfair because the district court excluded testimony regarding Officer Duerr's statement, allegedly overheard by Olivia Agushi, that she was going to "ruin" Olivia's mother and father. The trial judge rejected this argument, concluding

that the proffered testimony "may have been marginally relevant to Officer Duerr's credibility but it was not directly relevant to the question of whether excessive force had been employed in the arrest [and] could not conceivably have resulted in a different verdict."

In addition, Mrs. Agushi argued that the evidence regarding Hamit's beating of Olivia was admitted for no other purpose than to demonstrate Hamit's propensity to commit battery on other family members, and, therefore, that it should have been excluded as improper evidence of a prior bad act under Fed.R.Evid. 404(b). Alternatively, she argued that the prejudicial value of the evidence outweighed its probative value, and should have therefore been excluded under Rule 403. The court concluded that Rule 404(b) does not apply to acts of individuals other than the parties to a case but found that even if Rule 404(b) did apply, the evidence regarding child abuse would be admissible because it came under the "opportunity" and "identity" exceptions to the rule. The court also concluded that the evidence was admissible under Rule 403, because "[t]he possibility of unfair prejudice to the plaintiff seems extremely limited" and because the evidence was pertinent to the question of "whether the husband may have been the source of the plaintiff's bruising." Thus, the district court rejected both of Mrs. Agushi's arguments regarding the admission of evidence pertaining to Hamit Agushi's beating of Olivia.

## II. ISSUES

On appeal, Mrs. Agushi argues that the district court: (1) violated Rule 404(b) in admitting the testimony regarding Hamit Agushi's beating of Olivia; and (2) erred in excluding the testimony regarding Officer Duerr's statement, overheard by Olivia Agushi, that Duerr was going to "ruin those people."

## III. ANALYSIS

"We review the district court's determination for abuse of discretion, noting that [a]ppellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle." *United States v. Coleman,* 179 F.3d 1056, 1061 (7th Cir.1999) (internal quotations omitted) (brackets in original). Because we give "special deference" to the rulings of the trial judge Mrs. Agushi obviously "carries a heavy burden." *Palmquist v. Selvik,* 111 F.3d 1332, 1339 (7th Cir.1997). In this context, we will not reverse unless "the record contains no evidence on which [the district court] rationally could have based [its] decision, or where the supposed facts found are clearly erroneous." *Id.* (internal quotes omitted). Moreover, if an error in the admission or exclusion of evidence was committed during the trial, the court will grant a new trial only if the error had a "substantial influence over the jury," and the result reached was "inconsistent with substantial justice." *Id.* (internal quotes omitted); *see Wheeler v. Sims,* 951 F.2d 796, 802 (7th Cir.1992) ("No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." (quoting Fed.R.Civ.P. 61)); *see also Romero v. Cincinnati Inc.,* 171 F.3d 1091, 1096 (7th Cir.1999); *Collins v. Kibort,* 143 F.3d 331, 339 (7th Cir.1998); *Antevski v. Volkswagenwerk Aktiengesellschaft,* 4 F.3d 537, 541 (7th Cir.1993).

On appeal, Mrs. Agushi argues, as she did before the trial judge, that the court had violated Rule 404(b)[2] in admitting tes-

---

**2.** Federal Rule of Evidence 404(b) states, in pertinent part:

timony regarding Hamit Agushi's beating of his daughter Olivia. In the course of determining whether the testimony was admissible, the judge concluded that Rule 404(b) does not apply to third-party acts. While this is an issue of first impression in this circuit, we certainly are not without guidance or precedent.

 Rule 404(b) speaks not of the parties to a case, but of a "person." In the criminal context, for example, a defendant, "in order to prove mistaken identity, may show that other crimes similar in detail have been committed at or about the same time by *some other person.*" 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 404.22[4], at 404–106, and n. 5 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1999) (emphasis added). Evidence regarding other crimes is admissible for defensive purposes if it "tends, alone or with other evidence, to negate [the defendant's] guilt of the crime charged against him." *United States v. Stevens*, 935 F.2d 1380, 1404 (3d Cir.1991) (citations omitted). Such evidence is sometimes referred to as "reverse 404(b)" evidence. *Id.* Neither the plain language of Rule 404(b) ("a person"), nor any other consideration, suggests that a court should distinguish between the criminal and civil contexts when determining the admissibility of such evidence. In either case, of course, the court should balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time and confusion of the issues under Rule 403.

More importantly, in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court stated:

Federal Rule of Evidence 404(b)—which applies in both civil and criminal cases—generally prohibits the introduction of evidence of extrinsic acts that might ad-

versely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge. *Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.* The actor in the instant case was a criminal defendant, and the act in question was "similar" to the one with which he was charged. Our use of these terms is not meant to suggest that our analysis is limited to such circumstances.

*Id.* at 685–86, 108 S.Ct. 1496 (emphasis added). Even though *Huddleston* involved a situation in which the defendant was the actor, the Court strongly suggested that Rule 404(b) should be applied to any *actor*. *See id.* Finally, the Ninth Circuit, although in a criminal context, has previously held that Rule 404(b) applies to third parties. *See United States v. McCourt*, 925 F.2d 1229, 1231–35 (9th Cir.1991).

 Based on the Supreme Court's guidance, our sister circuit's reasoning as applied to the facts of this case, as well as the very language contained in Rule 404(b), we hold that Rule 404(b) does apply to third parties. *cf. United States v. Asher*, 178 F.3d 486, 493 (7th Cir.1999) (evidence admitted under 404(b) must be relevant, a factor determined by similarity and proximity in time); *United States v. Blum*, 62 F.3d 63, 68 (2d Cir.1995) (Rule 404(b) permits "admission against third parties of evidence of 'crimes, wrongs, or acts' if used to show 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident' "); *McCourt*, 925 F.2d at 1236 (Rule 404(b) applies both to defendants and to third parties). It is a close case but even though we disagree with the trial judge's ruling on the applica-

---

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissi-

ble for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

bility of Rule 404(b) to third parties, the error is harmless.[3]

■ Mrs. Agushi also argues that the court erred in excluding the testimony dealing with Officer Duerr's alleged statement, supposedly overheard by Olivia Agushi, that Duerr was going to "ruin those people." In sustaining the defendants' objection to the statement, the district court observed that the objection was not based on the hearsay rule, for the statement would be an admission by a party opponent. *See* Fed.R.Evid. 801(d)(2). But, the court found that the statement would be improper evidence of a prior bad act under Rule 404(b), and that it would also be improper evidence of an instance of conduct for the purpose of attacking a witness's credibility under Rule 608(b). Neither of these conclusions is persuasive. Initially, the testimony regarding Duerr's alleged "ruin" statement is not evidence of "other wrongs or acts." Rather, the statement is part and parcel of the case at hand and thus is not covered by Rule 404(b). At any rate, Rule 404(b) explicitly allows for the admission of evidence of "other wrongs or acts" to prove "motive, opportunity, intent, preparation, [or] plan." When attempting to introduce officer Duerr's testimony, Mrs. Agushi was obviously trying to establish that Officer Duerr went to her home with a pre-conceived judgment that she was a poor mother and harboring ill-will toward her. We note that "in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen." *Graham v. Connor*, 490 U.S. 386, 399 n. 12, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Furthermore, Rule 608(b) applies to instances of conduct proffered to impeach the credibility of a witness, and it is true that Duerr had taken the witness stand in her own defense. Mrs. Agushi, however, did not seek to introduce the testimony regarding Duerr's statement, "I'm going to ruin those people," to impeach Duerr's credibility as a witness. Rather, she sought to introduce the testimony as direct evidence that Duerr "harbored ill-will" toward her. Thus, the district court should not have analyzed the alleged statement of Officer Duerr under Rules 404(b) or 608(b) because Officer Duerr's statement was not improper evidence of a prior bad act and the plaintiff never sought to introduce the statement for the purposes of attacking Officer Duerr's credibility.

■ The trial judge also concluded that the testimony was not "relevant" under Rule 402, and, in the course of reaching this conclusion, remarked that the trial was in danger of degenerating into "mudslinging." We construe these two juxtaposed comments as a statement that the danger of unfair prejudice would substantially outweigh the testimony's probative value in violation of Rule 403. We emphasize again that we deferentially review a district court's determination under Rule 403, for "[o]nly in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge." *United States v. Fawley*, 137 F.3d 458, 466 (7th Cir.1998) (internal quotes omitted); *see e.g., United States v. Mancillas*, 183 F.3d 682, 701 (1999) (deference to credibility determinations made by a judge or a jury because they are in the best position to assess credibility and "[w]e do not second-guess ... credibility determinations because [a judge or jury] has had the best opportuni-

---

**3.** In a related argument, Mrs. Agushi asserts that testimony about domestic abuse should not have been admitted after she had already presented her case on the basis of the court's initial ruling that excluded the child-abuse evidence barring proper foundation. Mrs. Agushi appears to have committed the tactical error of assuming that the defendants would not be able to lay that foundation by introducing the evidence pertaining to domestic abuse of their daughter. We agree with the district court that "[a]ny adverse impact which accrued to plaintiff was a result of her own choice not to present rebuttal evidence."

ty to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record.")

In the case before us, the district court wished to put the focus of the trial on the testimony dealing with the confrontation at the Agushi residence, and concluded that the statement "I'm going to ruin those people" had little probative value with respect to the question before the court and the degree of physical force employed by Duerr and Zellmer in subduing Mrs. Agushi. Moreover, even if we were to conclude that the district court erred in excluding the testimony of Olivia, the error would be harmless. The trial centered on the question of whether Mrs. Agushi resisted and fought with the police at the time of the serving of the search warrant and her arrest and, if so, whether her resistance was of such a nature that it caused the bruises on her body. Because a variety of witnesses, including an independent witness (Mrs. Agushi's neighbor), testified that they observed that she was actively resisting the officers (to the extent, according to her neighbor, of "thrashing around") even after as she was cuffed and being led out of the house, the jury could reasonably have concluded that her own resistance caused the bruises and discoloration of her skin.[4]

### IV. CONCLUSION

The district court's denial of Mrs. Agushi's motion for a new trial is

AFFIRMED.

---

4. The same reasoning applies to Mrs. Agushi's argument that she should have been allowed to introduce evidence regarding "the multi-tude of prior contacts" between her and the police department concerning her daughter Olivia.