In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2249

United States of America,

Plaintiff-Appellee,

v.

Terry Reed,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CR-20029--Michael P. McCuskey, Judge.

Argued February 21, 2001--Decided July 27, 2001


  Before Posner, Kanne, and Diane P. Wood,
Circuit Judges.

  Kanne, Circuit Judge.  On June 10, 1999,
law enforcement agents executed a search
warrant at Terry Reed's residence in
rural Atwood, Illinois. The search of
Terry's/1 severely disheveled residence
yielded approximately eleven grams of
methamphetamine and numerous items
readily associated with the manufacture
of methamphetamine. Items recovered
outside the residence included: discarded
packaging materials for over 5000
pseudoephedrine tablets, a precursor
chemical for the manufacture of
methamphetamine; remains of a battery;
two empty Coleman fuel containers; two
propane tanks, one of which had been
exposed to anhydrous ammonia, also a
precursor chemical for methamphetamine;
and salt. Inside the house, agents seized
glass jars, syringes, plastic bags,
digital scales, lithium batteries, coffee
filters containing methamphetamine
residue, and multiple firearms.

  Terry was subsequently charged in a
single count indictment with
manufacturing methamphetamine in
violation of 21 U.S.C. sec.sec. 841(a)(1)
and 841(b)(1). At his trial, Terry
testified in his own defense. Although he
admitted to being a user of
methamphetamine, and to purchasing $100
worth of methamphetamine on the day his

house was searched, he denied any involvement in the manufacture of methamphetamine. Terry testified that, with the exception of the methamphetamine he had purchased the day of the search and a small amount that was found under a glass figurine in his bedroom, he had no knowledge of any of the additional methamphetamine seized by agents at his residence. He further denied any knowledge of the numerous discarded pseudoephedrine packets found in his family's trash/burn barrels, explaining that the only such packets he knew of were those from the tablets his family had taken for mononucleosis and sore throats.

Terry's theory of defense was that he had not manufactured methamphetamine and that the various items found at his residence deemed to be evidence of such activity were not his, but instead were put there by either his brother, Richard Reed, or Wallace Brady. Terry testified that he had allowed his brother, Richard, and his brother's wife and son, to live in the enclosed back porch of his residence for approximately one week at the end of March 1999. During the last night of his brother's stay, Terry awoke in the early hours of the morning to find his brother and two men "partying around a bucket." Terry recognized one of the men as Michael Tucker, a man Terry thought to be a manufacturer of methamphetamine. Terry testified that although he did not personally know how to manufacture methamphetamine, it appeared to him that this is what the three men were doing. Therefore, he kicked the bucket over and asked them to leave.

Shortly after Richard's departure, Terry permitted Wallace Brady, a man he met while fishing, to live in the enclosed porch for several months. Terry explained, however, that he made Brady leave approximately five to seven days before June 10, 1999, because he caught Brady manufacturing methamphetamine in his backyard. Terry testified that Brady left all of his possessions behind, some of which Terry later moved into his bedroom. Terry contended that some of the items seized by agents that contained methamphetamine were Brady's possessions.

In addition to his own testimony, Terry

sought to support his theory by making a motion in limine to admit the testimony of three witnesses, pursuant to Rule 404(b) of the Federal Rules of Evidence, to demonstrate that Richard and Brady had manufactured methamphetamine on other occasions in the past.

With regard to Richard, Terry's attorney orally proffered the testimony of Alice and Richard Johnson. Specifically, this proffer explained that the Johnsons would testify that they allowed Richard to stay with them in early April 1999, but that they asked him to leave shortly thereafter because they observed behavior that lead them to believe that he was manufacturing methamphetamine. The Johnsons would have explained that while Richard stayed with them, he was very hyped up, never slept, and was in the garage at all hours of the day and night. They would have also testified that they found several empty Coleman fuel containers in their garage after Richard left their residence.

Terry also proffered the testimony of Illinois State Police Officer Terry Eck. Eck appeared before the court and testified regarding a search he and other agents had executed, pursuant to a warrant, on Richard's apartment on May 18, 1999. This search yielded a quantity of methamphetamine that had been dissolved in water and numerous packages that had contained ephedrine or pseudoephedrine tablets. Officer Eck also testified that, following the search, Richard admitted to him that he had removed the pseudoephedrine or ephedrine tablets from the empty packages.

Terry also proffered the testimony of Officer Eck to show that Brady had manufactured methamphetamine on other occasions. Officer Eck testified that a search was conducted of Brady's apartment in Pana, Illinois in the early hours of June 10, 1999, in response to a complaint that there was a strong odor emitting from Brady's apartment. The search yielded batteries that had been torn apart, several empty pseudoephedrine packages, and coffee filters. Officers also found a plastic milk jug with a rubber hose coming out of the top of it that appeared to be filled with salt. Officer Eck referred to this device as a "gas generator." He also explained that the equipment found at Brady's apartment

indicated that someone at the residence was attempting to manufacture methamphetamine.

The district court denied Terry's motion to introduce the testimony of the Johnsons, finding such evidence to be "too remote, not similar enough, and the mere fact that [Richard] is a user is not enough to come in this case." Tr. at-423-24. The court also refused to admit Officer Eck's testimony describing the May 1999 search of Richard's apartment, concluding that such evidence did not provide "enough similarity or relevance to allow the testimony of Terry Eck as reverse 404(b) testimony." Id. at 417. The court did admit Officer Eck's testimony regarding Brady, however, because it was "similar enough in time" and it "at least somewhat corroborate[d] the fact that [Brady] may be involved in methamphetamine manufacture." Id. at 421. The jury found Terry guilty of manufacturing methamphetamine in violation of 21 U.S.C. sec.sec. 841(a)(1) and 841(b)(1). He was subsequently sentenced to 188 months incarceration. Terry now appeals the validity of his conviction, arguing that the district court erred in excluding the evidence indicating that his brother manufactured methamphetamine.

Analysis

We review the district court's decision denying the admission of Terry's proffered evidence for an abuse of discretion. See United States v. Walton, 217 F.3d 443, 449 (7th Cir. 2000). "[B]ecause of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding," our review of such evidentiary rulings "afford[s] great deference to the trial court's determination." United States v. Van Dreel, 155 F.3d 902, 905 (7th Cir. 1998). Additionally, even if we find that the district court erred in excluding this evidence, we will only reverse Terry's conviction if the court's error "had a 'substantial influence over the jury,' and the result reached was 'inconsistent with substantial justice.'" Walton, 217 F.3d at 449 (quoting Palmquist v. Selvik,

111 F.3d 1332, 1339 (7th Cir. 1997)).

Rule 404(b)/2 of the Federal Rules of Evidence is typically employed by federal prosecutors seeking to rely on evidence of a criminal defendant's prior convictions or other misconduct as proof of that defendant's "motive, opportunity, intent, preparation, plan, knowledge, or identity" with regard to a different crime for which the defendant is being prosecuted. United States v. Wash, 231 F.3d 366, 370 (7th Cir. 2000) (citations omitted). We have explained, however, that pursuant to Rule 404(b), "[e]vidence regarding other crimes is admissible for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." Agushi v. Duerr, 196 F.3d 754, 760 (7th Cir. 1999) (internal quotations omitted). This type of evidence is referred to as a "variant of Rule 404(b), known as 'reverse 404(b),'" evidence. United States v. Stevens, 935 F.2d 1380, 1401-02 (3d Cir. 1991). In deciding whether to admit such evidence, a district court "should balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time and confusion of the issues under Rule 403." Walton, 217 F.3d at 449 (internal quotations omitted).

The evidence Terry sought to have admitted at his trial demonstrating that his brother, Richard, manufactured methamphetamine on multiple occasions fits into this category of "reverse 404(b)" evidence. Thus, the question we must decide is whether the testimony of the three witnesses, which indicated that Richard had manufactured methamphetamine at the Johnsons' residence in early April and at his own apartment in the middle of May 1999, tends to negate the evidence that Terry had manufactured methamphetamine around June 10, 1999. The district court answered this question in the negative, concluding that this evidence was marginal, at best, and too remote to help negate the evidence of Terry's guilt as to the offense charged. We find that the court did not abuse its discretion in arriving at that conclusion.

Unlike Brady, who stayed with Terry up until about a week before law enforcement agents searched Terry's residence,

Richard had not been on Terry's property since he stayed with Terry in late March. In fact, Terry testified that he had not even seen Richard since early April 1999. Additionally, Terry testified that Brady left all of his possessions at Terry's residence, describing these possessions to include equipment seized by agents that could be used to manufacture methamphetamine and other personal items from which agents recovered methamphetamine. No such testimony was offered regarding Richard. Furthermore, Sanford Angelos, a forensic chemist from the Drug Enforcement Agency, testified that the condition of the methamphetamine residue contained in the coffee filters and the methamphetamine recovered from inside Terry's residence indicated that both substances had been recently manufactured./3 Thus, Terry's explanation of the events that transpired at his house and the agent's testimony describing the condition of the evidence found at Terry's residence indicate that while it was at least possible that Brady may have manufactured the methamphetamine found at Terry's residence, no such conclusion was possible with regard to Richard. Therefore, we find that the district court properly exercised its discretion in determining that the testimony pertaining to Richard was too remote to negate Terry's guilt of the offense charged and to subsequently deny the admission of that testimony.

The nature and quantity of the physical evidence recovered from Terry's residence was quite powerful. Additionally, Terry's own testimony was extremely incriminating. When cross-examined by the government, Terry repeatedly failed to provide credible explanations for a number of topics, including his family's use of pseudoephedrine and the origin of physical evidence found at his residence. Moreover, the jury convicted Terry despite the presentation of the evidence regarding Brady, evidence that was both temporally corroborative with Terry's theory and compatible with expert testimony regarding the condition of the physical evidence. Therefore, even if the district court had erred in its decision as to the admissibility of the proffered testimony, the evidence in this case was so overwhelming against Terry that his conviction was not "'inconsistent with substantial justice.'" Walton, 217 F.3d

at 449 (quoting Palmquist, 111 F.3d at 1339).

Conclusion

Based on the aforementioned reasons, we AFFIRM Terry Reed's conviction.

FOOTNOTES

/1 We will refer to Terry and Richard Reed by their first names throughout this opinion in order to avoid confusion.

/2 Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed. R. Evid. 404(b).

/3 The recently manufactured methamphetamine found in Terry's residence totaled approximately 11.4 grams. This amount greatly exceeded the quantity of methamphetamine Chris Orndoff sold to Terry on June 10, 1999.