In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2037

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HILDA ALAYETO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-CR-243—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED OCTOBER 22, 2010—DECIDED DECEMBER 17, 2010

Before KANNE, TINDER, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Hilda Alayeto appeals her conviction for illegal possession with intent to distribute crack cocaine. She argues that excluded evidence of her co-defendant's post-arrest conduct might have led a jury to doubt her criminal intent and that its erroneous exclusion impaired her constitutional right to present a defense. Because the district court did not abuse its discretion in its evidentiary rulings, we affirm.

## I. BACKGROUND

On the evening of July 4, 2007, Alayeto was riding with Victor Gonzalez in his car. She was in the front passenger seat. Two police officers, who knew Gonzalez to be a gang member and drug trafficker, conducted a traffic stop of the vehicle. The officers got out of their unmarked car, approached Gonzalez's vehicle with pistols drawn, and ordered Gonzalez, Alayeto, and a back seat passenger to show their hands.

In full view of the officers, Gonzalez reached across the front seat and dropped a clear plastic bag containing a white substance into Alayeto's lap. Without conversation, hesitation, or protest, Alayeto leaned her pelvis forward and shoved the bag down the front of her pants. After Alayeto concealed the bag, Gonzalez unlocked the doors.

The officers arrested Gonzalez and Alayeto and transported them to a police station where they were searched and interviewed. A female officer recovered the bag—which was later determined to contain 32.82 grams of a substance containing a detectable amount of crack cocaine—from Alayeto's vagina. Alayeto had been restrained and under supervision from the time of her arrest until the search, so it appears that Alayeto had immediately concealed the contraband in her vagina while in the passenger seat of Gonzalez's car. When Detective Harold Young informed Alayeto that she and Gonzalez would be taken to the municipal jail, Alayeto volunteered that the drugs belonged to her alone and not to Gonzalez. Detective Young responded that she

needed to be honest about whether someone threatened her in order to force her to take the crack and claim it, but Alayeto did not suggest she had been coerced.

Although the nature of their relationship is unclear from the record, Alayeto and Gonzalez were very close, having lived in the same house for more than five years. Alayeto called Gonzalez's mother, Milagros Rosa, from jail a few days after their arrest; her phone calls from the jails were recorded. Alayeto expressed her love and concern for Gonzalez. Gonzalez's uncle also participated in the conversation, indicating that he would speak to a lawyer on Alayeto's behalf.

In a subsequent phone call to Rosa, Alayeto inquired about Alayeto and Gonzalez's joint property inside their house, including money that should be found in an article of clothing concealed inside a couch. Rosa then asked Alayeto about the quantity of contraband recovered from her; she told Rosa the police removed "like 32 grams" from her vagina at the station. She also mentioned the arresting officers by name, stating she had known they were looking for Gonzalez prior to the night of their arrest.

A grand jury charged Alayeto and Gonzalez with possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Gonzalez pled guilty before their scheduled trial, so Alayeto was tried alone. Alayeto sought to elicit testimony from government witnesses regarding Gonzalez and incidents of his conduct. The district court limited her cross-examina-

tion, holding that her questions called for hearsay responses.

In a series of proffers at the end of the government's evidence, Alayeto proposed to show that—while released on bond after their July 4 arrest—Gonzalez had (1) provided Rosa approximately five grams of cocaine to hide on her person when officers searched his residence, (2) given a fourteen-year-old female passenger a large amount of currency to hide on her person when stopped for a traffic violation, and (3) given another female juvenile a small quantity of cocaine and directed her to hide it in her pants during yet another traffic stop. The district court asked Alayeto to state her theory of the proffered evidence's admissibility. Alayeto responded the evidence would show that Gonzalez acted alone on the date of their arrest and that Alayeto did not aid and abet Gonzalez's possession with intent to distribute.

The district court, on the government's objection, ruled Alayeto could not introduce the proffered evidence based on several Federal Rules of Evidence. The court first ruled that the officers from whom Alayeto intended to elicit testimony of these incidents lacked personal knowledge of the incidents. The court then noted that the proffered propensity evidence would not appear to fall within the exceptions to Rule 404(a)'s bar against attempts to prove that actions conformed to a person's character. The court also questioned the relevance of the evidence, as the incidents occurred after Alayeto's arrest and could shed little light on her intent at the time

of her arrest. The court then ruled the proffered evidence inadmissible under Rule 403, as its negligible probative value was significantly outweighed by the consumption of time and the delay of the trial inherent in securing testimony from competent witnesses on such ancillary issues. Alayeto responded that evidence of the incidents should be admitted under Rule 404(b), but the district court again noted that the incidents lacked relevance.

Alayeto next proposed to introduce Gonzalez's phone calls from jail in her case in chief. She suggested that the recorded calls would show that Gonzalez conducted trafficking activities through his uncle while in jail, thus demonstrating that Alayeto was not a participant in Gonzalez's trafficking. The government again objected. The district court ruled the evidence inadmissible, finding the calls to be irrelevant to Alayeto's case, to be hearsay not subject to any exception, and to be inadmissible under Rule 403.

Alayeto moved for a mistrial on the grounds of the evidentiary exclusions. The court denied her motion, finding that its evidentiary rulings did not deprive her of due process or the opportunity to present evidence supporting her theory of defense. The jury then found Alayeto guilty after the two-day trial. The district court later sentenced Alayeto to sixty months' imprisonment and a subsequent four-year term of supervised release. She timely appealed her conviction.

## II. ANALYSIS

Alayeto presents two issues in her appeal. First, she contends the district court abused its discretion by excluding evidence of her co-defendant's post-arrest conduct that would have cast reasonable doubt on her intent. Second, she contends those evidentiary rulings infringed her constitutional right to present a defense during her criminal trial. Both issues turn on Alayeto's argument that the excluded evidence constituted admissible "reverse 404(b)" evidence that would have led to her acquittal.

We review the district court's decisions to exclude Alayeto's proffered evidence for an abuse of discretion. *United States v. Jones*, 600 F.3d 847, 853 (7th Cir. 2010). We will not find error in the district court's evidentiary rulings unless the record is devoid of evidence on which it could have based those rulings. *Agushi v. Duerr*, 196 F.3d 754, 759 (7th Cir. 1999). In addition, we will not reverse a conviction for erroneous exclusion of reverse 404(b) evidence unless the ruling had substantial influence on the jury. *United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2001). We review *de novo*, however, the question of whether the evidentiary ruling infringed upon a defendant's constitutional rights. *See United States v. Stark*, 507 F.3d 512, 515 (7th Cir. 2007).

Alayeto argues that, had the jury been made aware of Gonzalez's post-arrest conduct, it might have inferred that females in his company do not have the intent to deliver contraband thrust on them by Gonzalez. Based on that inference, the jury might then have had

reasonable doubt that she had any criminal intent on the date of her arrest. She therefore contends that the evidence of his post-arrest conduct—which was to be the only evidence supporting her theory of defense—should have been admitted pursuant to Fed. R. Evid. 404(b).

While admission of propensity evidence is generally prohibited, *United States v. Murray*, 474 F.3d 938, 939 (7th Cir. 2007), Rule 404(b) allows the introduction of an individual's other acts for a variety of other purposes. Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Rule 404(b) is most often used by prosecutors to introduce evidence of a criminal defendant's conduct that is not part of the charged crimes, but which is probative of the defendant's motive, intent, or identity with regard to the charged crime. *Reed*, 259 F.3d at 634. Criminal defendants, however, may also use Rule 404(b) to bolster their defenses by making use of what is known as "reverse 404(b)" evidence. *Id.* Under Rule 404(b), Alayeto may introduce evidence regarding Gonzalez's other crimes or conduct to support her defense "if it tends, alone or with other evidence, to negate [her] guilt of the crime charged against [her]." *Agushi*, 196 F.3d at 760.

According to Alayeto, evidence of Gonzalez's post-arrest conduct would have supported her theory of defense and thus likely would have negated her guilt on the

narcotics charge. She argues the evidence should have been admitted because district courts should be less discriminating in admitting reverse 404(b) evidence than in admitting evidence proffered by the prosecution. *See United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005) ("[T]he defense is not held to as rigorous of a standard as the government in introducing reverse 404(b) evidence."). She nevertheless concedes that its admission is still constrained by the other Federal Rules of Evidence. For example, the proffered reverse 404(b) evidence must be relevant, *United States v. Walton*, 217 F.3d 443, 449-50 (7th Cir. 2000), must not constitute inadmissible hearsay, *United States v. Della Rose*, 403 F.3d 891, 902 (7th Cir. 2005), and must survive the balancing of competing considerations under Rule 403, *United States v. Wilson*, 307 F.3d 596, 601 (7th Cir. 2002). The district court correctly relied on each of these rules in its evidentiary rulings below.

Following Alayeto's first proffer of reverse 404(b) evidence—Gonzalez's three post-arrest incidents where females concealed contraband for him—the district court evaluated the probative value of the evidence and then weighed it under Rule 403. The district court found, and we agree, that "[i]f it is true that Mr. Gonzalez engaged in those activities after the date of this incident, it does not demonstrate that this particular defendant was forced to take drugs from Mr. Gonzalez and put it into her pants or body cavity." (Tr. at 285.) Nothing in Alayeto's proffer tended to demonstrate that Gonzalez compelled her or any other female to take or conceal the drugs, let alone tended

to prove that Gonzalez's conduct around others necessarily negated her own intent. *See Murray*, 474 F.3d at 940 (discussing reverse 404(b) cases in which a third party's pattern of criminal conduct was probative of the defendant's criminal intent or participation). The other evidence at trial showed that she did not protest before concealing the bag. Indeed, she concealed the bag not just in her pants but rather in her vagina; such resolve strongly suggests her intimate involvement with the crime as opposed to mere unwilling participation. Further, the jury's knowledge of the post-arrest incidents would not tend to negate any inferences drawn from Alayeto's familiarity with both the precise amount of contraband she concealed and her knowledge that Gonzalez was wanted for drug trafficking. The contested evidence may have demonstrated Gonzalez's intent to deliver the narcotics, but it would not have been significantly probative of Alayeto's intent. Their individual intents are not mutually exclusive.

Pursuant to Rule 403, the district court next weighed this negligible probative value against considerations of delay, waste of time, and confusion of the issues before the jury. The court correctly noted that the trial would have to be delayed to procure witnesses competent to testify about the incidents because the available witnesses lacked the requisite personal knowledge. Despite Alayeto's arguments to the contrary, there was also a danger that the jurors would be distracted from the central issue in the case—Alayeto's intent—by prolonged discussions of Gonzalez's post-arrest activities.

Neither this risk of confusion nor the potential for delay would have substantially outweighed reverse 404(b) evidence of significant probative value. But Gonzalez's post-arrest conduct had minimal relevance, if any. Given the trial judge's "ability to gauge the impact of the evidence in the context of the entire proceeding," *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008), we find that the district court properly exercised its discretion in determining that Alayeto's first category of proffered evidence was not admissible.

Alayeto's second proffer of reverse 404(b) evidence—Gonzalez's recorded calls from jail and the subsequent arrest of his uncle—likewise suffered from a lack of probative value. The district court also concluded that the calls were inadmissible hearsay. Alayeto's only response to that conclusion is that the calls occurred within the conspiracy period charged against Gonzalez in the same indictment naming Alayeto in a joint count. Yet the indictment's only count naming Alayeto does not involve conspiracy charges, and Alayeto never developed any argument for admitting the evidence under Rule 801(d)(2)(E) or any other Rule. Accordingly, the district court did not abuse its discretion by ruling this evidence also inadmissible.

Having found that the district court did not err in its evidentiary rulings, we turn briefly to Alayeto's second issue—that the rulings deprived her of her constitutional right to present a defense. Alayeto, as a criminal defendant, was unquestionably entitled to "a meaningful opportunity to present a complete defense."

*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). As the Supreme Court reiterated in *Holmes*, however, judges may exclude marginally relevant evidence and evidence posing an undue risk of confusion of the issues without offending a defendant's constitutional rights. *Id.* at 326-27. We find that the evidence Alayeto sought to introduce could not have played a major role in casting doubt on her guilt and that the district court did not err by excluding it. Accordingly, its exclusion did not violate Alayeto's constitutional right to present a complete defense. *See Wilson*, 307 F.3d at 601.

### III. CONCLUSION

Because the district court's evidentiary rulings were not erroneous and did not deprive Alayeto of any constitutional right, we AFFIRM Alayeto's conviction.