**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

Nos. 04-2215, 04-2241

VICTOR MONTELONGO, JR.; and
RONALD EDWARD McCALVIN,

Defendants - Appellants.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CR-03-1471 RB)**

Mario A. Esparaza, Las Cruces, New Mexico, for Appellant Montelongo.

Thomas L. Wright, El Paso, Texas, for Appellant McCalvin.

Kyle T. Nayback, Assistant United States Attorney (David C. Iglesias, United
States Attorney, and Laura Fashing, Assistant United States Attorney, on the
briefs), for Appellee.

Before **TACHA** , Chief Circuit Judge,     **EBEL** , and  **McCONNELL**  , Circuit Judges.

**TACHA**, Chief Circuit Judge.

Defendants-Appellants Victor Montelongo, Jr. and Ronald Edward

McCalvin were charged with possession with intent to distribute more than fifty kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess with intent to distribute more than fifty kilograms of marijuana, in violation of 21 U.S.C. § 846, after ninety-three kilograms of marijuana were found in the sleeping compartment of the semi-truck they were co-driving. Following a jury trial, Mr. McCalvin was convicted on both counts and Mr. Montelongo was convicted only on the possession count. During trial, the owner of the semi-truck, Gilbert Gomez, Jr., testified for the Government. The Defendants sought to cross-examine Mr. Gomez about an incident a few months before their arrest during which marijuana was found in the sleeping compartment of a second semi-truck owned by Mr. Gomez that was being driven by two other men. The District Court held that Fed. R. Evid. 404(b) and 608(b) precluded the Defendants from eliciting such testimony. On appeal, the Defendants contend that the District Court's ruling violated the Confrontation Clause of the Sixth Amendment. We take jurisdiction under 28 U.S.C. § 1291, conclude that the District Court committed error that is not harmless beyond a reasonable doubt, and therefore REVERSE and REMAND.[1]

---

[1]Mr. Montelongo raises two other issues on appeal: the sufficiency of the evidence regarding possession and a challenge to his sentence under *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). Because we reverse on the evidentiary issue, we need not address these other issues.

# I. BACKGROUND

Although the facts leading up to the Defendants' arrests are disputed to some degree, the undisputed facts reveal the following: On April 29, 2003, Mr. Montelongo picked up the tractor portion of the semi-truck from Mr. Gomez's home. Mr. Gomez testified that at that time, no marijuana was in the truck. Mr. Montelongo was scheduled to drive a load from New Mexico to Michigan with a co-driver, Carmen McCalvin. But that day, Ms. McCalvin's husband, Defendant Ronald McCalvin, substituted himself for his wife because he did not want his wife to co-drive with a man. At approximately 12:45 A.M. on April 30, the Defendants picked up the trailer portion of the semi-truck.

With Mr. Montelongo driving, the Defendants then headed off for Michigan on Highway 54, a little-used route. After about half an hour, Mr. Montelongo claimed he was tired and pulled over. Mr. McCalvin then drove while Mr. Montelongo slept in the sleeping compartment. Some seventeen miles after this switch in drivers, the truck approached a border patrol checkpoint.

At the checkpoint, Officer Yvette Haran approached the driver's side of the truck and spoke with Mr. McCalvin. Mr. McCalvin continuously blew cigarette smoke into Officer Haran's face. Officer Haran noted an overwhelming scent of orange air freshener. Based on her training, the Officer determined that the orange scent and smoke likely were attempts to mask the smell of narcotics.

Officer Haran then asked Mr. McCalvin if he had a co-driver. He said he did and nervously hit the curtain behind which Mr. Montelongo was sleeping. Mr. Montelongo only stuck his head out—hiding the remaining portion of the sleeping compartment from view. Officer Haran found this action unusual. Mr. Montelongo contends that he hid the sleeping portion of the cabin from Officer Haran because he was not clothed.

Officer Haran then asked for permission to conduct a canine search, to which Mr. McCalvin consented. The search was somewhat delayed, however, as it took Mr. Montelongo approximately five minutes to get out of the sleeping compartment. Mr. Montelongo contends this delay was caused by his need to get dressed.

During the search, the dog alerted to the area underneath the mattress in the sleeping compartment. When the dog alerted, Mr. McCalvin purportedly blurted out, "Oh, my God. This isn't happening to me." Officers looked through a hole under the mattress and noticed cellophane-wrapped bundles. They removed the mattress rack with a socket-wrench that was located inside the cab. They found twenty-five bundles of marijuana contained in duffle bags, weighing ninety-three kilograms, and having a street value of $200,000 to $250,000. The officers then arrested Mr. Montelongo and Mr. McCalvin.

In a separate incident a few months before the Defendants' arrest, Eric

Brown and Moses Hernandez, both truck drivers, were similarly charged with trafficking marijuana. That case had several facts in common with the facts of this case: The truck Mr. Brown and Mr. Hernandez drove was owned by Mr. Gomez; the marijuana was packed in duffle bags; and it was hidden in the sleeping compartment of the cabin. Messrs. Brown and Hernandez, however, never implicated Mr. Gomez in the crime. Rather, they claimed that they found the thirty-four pounds of marijuana lying by the side of the road and put it into the sleeping compartment themselves. Mr. Gomez was not charged or found guilty of any wrongdoing in the previous case.

The case involving Mr. Montelongo and Mr. McCalvin eventually went to trial. Prior to trial, however, attorneys for both Mr. Montelongo and Mr. McCalvin moved in limine to exclude evidence of the case involving Mr. Brown and Mr. Hernandez because they feared that their clients would be convicted of participating in an extensive trafficking conspiracy. The District Court granted the motion. At trial, the essence of Mr. Montelongo's defense was that the marijuana belonged to Mr. Gomez and that he alone, or in conspiracy with Mr. McCalvin, had duped him into being an unknowing transporter of the marijuana. Not surprisingly, the essence of Mr. McCalvin's defense at trial was that he was an unknowing transporter, duped by Mr. Gomez alone or in conspiracy with Mr. Montelongo. In other words, each Defendant contended that Mr. Gomez was the

mastermind behind a marijuana trafficking scheme, about which they had no knowledge. The Government, on the other hand, elicited testimony from Mr. Gomez on direct examination that Mr. Gomez had inspected the truck just before Mr. Montelongo picked it up and had found no marijuana in it.

Although the Defendants had successfully moved in limine to exclude evidence of the previous case, they sought to cross-examine Mr. Gomez about the facts of that case in order to bolster their contention that Mr. Gomez was operating a drug ring of which the Defendants were unaware. The Government objected, arguing that Mr. Gomez was never charged or convicted in the previous case and that the testimony was therefore inadmissible. After dismissing the jury and ordering briefing on the issue, the District Court ruled that Fed. R. Evid. 404(b) and 608(b) precluded the Defendants from cross-examining Mr. Gomez about the prior case. The jury ultimately found Mr. Montelongo not guilty on the conspiracy charge and guilty on the trafficking charge and found Mr. McCalvin guilty on both charges. The Defendants separately entered timely appeals, which we consolidated for determination on appeal.

## II.  STANDARD OF REVIEW

"We review de novo whether a defendant's Sixth Amendment confrontation rights were violated by cross-examination restrictions." *United States v. Byrne*, 171 F.3d 1231, 1234 (10th Cir. 1999). If we find such constitutional error, we

will reverse unless we determine that the error is harmless beyond a reasonable doubt. Fed. R. Crim. P. 52(a); *Chapman v. California*, 386 U.S. 18, 24 (1967). Because this issue was preserved below, the Government bears the burden to prove that any error was harmless. *United States v. Riccardi*, 405 F.3d 852, 875 (10th Cir. 2005).

### III. DISCUSSION

A.      Error

A defendant's right to cross-examine witnesses against him is guaranteed by the Sixth Amendment. *See Rock v. Arkansas*, 483 U.S. 44, 51 (1977). The right to cross-examine witnesses, however, is not without limits. *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004). "At a minimum, a defendant is limited to presenting relevant evidence, which is evidence having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (citations omitted); *see also United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense.").

On appeal, the Defendants argue that the previous case involving Mr. Brown and Mr. Hernandez was relevant to both the trafficking and conspiracy

charges. "To determine what evidence is relevant, we first turn to the elements of the offense." *Markey*, 393 F.3d at 1135. "To prove a charge of possession with intent to distribute, the government must show that [1] the defendant possessed the controlled substance; [2] knew that he had it; and [3] possessed it with the intent to distribute it." *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000). A conspiracy in violation of 21 U.S.C. § 846 consists of four elements. *See United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998). The government must prove beyond a reasonable doubt "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *Id*.

We agree with the Defendants that the previous case is relevant to the Defendants' case. There are several similarities between the two crimes, and a jury could disbelieve the somewhat incredible story told by Mr. Brown and Mr. Hernandez—that they found thirty-four pounds of marijuana by the side of the road—concluding instead that Mr. Gomez himself had packed it in the semi-truck. In this way, the previous case is relevant as it tends to make it less probable that the Defendants knowingly possessed the marijuana or that they knowingly and voluntarily involved themselves in a drug conspiracy.

Relevancy alone, however, does not end our analysis of the propriety of

cross-examining Mr. Gomez about the Brown case. "[I]n presenting evidence the defendant must 'comply with established rules of evidence and procedure . . . to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Solomon*, 399 F.3d at 1239 (quoting *Richmond v. Embry*, 122 F.3d 866, 871–72 (10th Cir. 1997)) (omission in original). "While a state may not apply a rule of evidence mechanistically to defeat the ends of justice, in appropriate circumstances, the defendant's right to present relevant testimony may 'bow to accommodate other legitimate interests in the criminal trial process.'" *Richmond*, 122 F.3d at 872 (quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)).

The district court judge expressed doubt as to whether Fed. R. Evid. 404(b) permitted cross-examination on this issue, but he recognized that "this is critical stuff" and asked the parties to brief the issue overnight so that he could consider it afresh the next morning. With the benefit of that briefing, the court ruled:

> I am not going to allow any questioning of Mr. Gomez relating to the prior incident. I think that this matter is covered by [Fed. R. Evid.] 404(b) and 608(b). And I don't—each of which, relate to specific instances of conduct on the part of the person being questioned. The 404(b) relates to other crimes, wrongs, or acts committed by the person being questioned. 608 relates to the specific instances of the conduct of a witness—specific instances of the conduct of the witness, of Mr. Gomez, for the purpose of attacking or supporting his credibility.
>
> And what particular instances would we be asking Mr. Gomez about? He wasn't driving the truck. He wasn't charged relating to possession in that instance. And what I'd be allowing you to do is put before the jury just enough to taint Mr. Gomez, when the law

-9-

enforcement authorities didn't find any wrongdoing on his part. Apparently, as I've reviewed the Discovery that was provided by the Government to the Defense, the truck was returned to him and—without any prosecution.

Because the District Court relied on specific rules of evidence, we turn to their text. Federal Rule of Evidence 404(b) states in relevant part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Rule 404(b) is typically used by prosecutors seeking to rely on a criminal defendant's prior bad acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the crime charged. The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." *Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir. 1999) (alternations and quotations omitted). This type of evidence is often referred to as "reverse 404(b)" evidence. *See, e.g.*, *id.*; *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004).

Other circuit courts addressing the issue hold that admissibility of reverse 404(b) evidence depends on a "straightforward balancing of the evidence's

probative value against considerations such as undue waste of time and confusion of the issues." *United States v. Stevens*, 935 F.2d 1380, 1404–05 (3d. Cir. 1991); *see also United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2004). As discussed above, we conclude that the evidence the Defendants sought to elicit on cross-examination was relevant to their defense that they had no knowledge of the marijuana packed in the truck they were driving. We note that the similarities between the two crimes and their temporal proximity that makes this evidence probative. *See Stevens*, 935 F.2d at 1404 (stating that "a lower standard of similarity [between the crime at issue and "other crimes" evidence] should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor."). Although Messrs. Brown and Hernandez maintained that they simply found the thirty-four pounds of marijuana by the side of the road, it would not be unreasonable to conclude that such similarities are not coincidental, which belies Mr. Gomez's claim that he had no knowledge of the marijuana in this case.

We also find that the relevance of the proffered evidence is not substantially outweighed by the risk of confusing the jury or the potential for waste of time. The Defendants only sought to cross-examine one witness on this one discrete issue. Nor was there any real danger that the similarities between the two crimes would have "distracted the jurors' attention from the real issues in the case." *Id.* at 1406. To the contrary, it would have highlighted the central issue at

-11-

trial—namely, which man was responsible for the contraband. As such, we find that District Court erred in preventing the Defendants from cross-examining Mr. Gomez based on Rule 404(b).

The District Court also ruled that Fed. R. Evid. 608(b) barred the cross-examination of Mr. Gomez about the previous case. That Rule states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609 . . . may, [] in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

This Rule simply does not apply here. By its terms, the Rule only applies to specific instances of conduct used to attack or support the witness' character for truthfulness. As discussed above, however, the Defendants did not seek to cross-examine Mr. Gomez on the prior incident in order to "attack" his "character for truthfulness," but rather to negate the Defendants' guilt of the crime charged against them and to establish that Mr. Gomez had knowledge of the marijuana in the truck driven by the Defendants. As such, Rule 608(b) does not bar the Defendants' cross-examination of Mr. Gomez, *see Agushi*, 196 F.3d at 761 (7th Cir. 1999), and the District Court therefore erred in determining that either Fed. R. Evid. 404(b) or 608(b) could be used to preclude such cross-examination.

This error, we conclude, undermined the protections afforded by the Sixth

-12-

Amendment's Confrontation Clause. Of course, we certainly recognize that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Nonetheless, we underscore that a constitutional violation occurs when "the defendant is prohibited from engaging in 'otherwise appropriate cross-examination'" that, as a result, precludes him from eliciting information from which jurors could draw vital inferences in his favor. *Cf. United States v. Ellzey*, 936 F.2d 492, 496 (10th Cir. 1991). Put another way, "a defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination." *Parker v. Scott*, 394 F.3d 1302, 1316 (10th Cir. 2005) (quotations and alterations omitted).

We find this to be the case here. As discussed, evidence of the prior incident tended to negate the Defendants' guilt, and, as such, was directly—as opposed to merely "marginally"—relevant. *See Van Arsdall*, 475 U.S. at 679. In addition, we also find that the potential evidence's relevancy was not substantially outweighed by the risk of confusing the jury or the potential of an undue waste of time. Moreover, it was neither cumulative nor repetitive, and the Defendants had no improper motive in seeking it. Therefore, given the potential significance of

-13-

the prior incident, precluding the Defendants from cross-examining Mr. Gomez on the issue infringed on their Sixth Amendment right to confront witnesses against them.

B.     Harmless Error

We now turn to whether the District Court's error in preventing such testimony was harmless. As noted above, because the error in this case is constitutional, the Government bears the burden to demonstrate that the error was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24; *Riccardi*, 405 F.3d at 875. This burden is substantial, *United States v. Lott*, 310 F.3d 1231, 1251 (10th Cir. 2002), and we hold that the Government does not meet it in this case.

In support of its contention that the error was harmless, the Government argues that even if the evidence of the previous incident was admitted, it does not tend to prove the Defendants' innocence when viewed in light of the rest of the record—it only tends to prove that Mr. Gomez was involved in the conspiracy as well. The Government points to the following: the presence of masking agents—cigarette smoke and air freshener—used to hide the smell of the marijuana; Mr. Montelongo telling detention officers that Mr. McCalvin did not

-14-

know what was stored in the truck;[2] Mr. Montelongo's control over the truck, and his request that Mr. McCalvin drive as they approached the checkpoint; Mr. Montelongo's delay in exiting the cab of the truck; the presence of a socket-wrench in the truck that perfectly fit the mattress rack bolts; Mr. McCalvin's nervous behavior; and Mr. McCalvin blurting out, "This isn't happening to me," when the canine alerted to the presence of narcotics.

On the other hand, we cannot say for certain how much information the Defendants might have elicited from Mr. Gomez on cross-examination, how the jury might have viewed Mr. Gomez's demeanor on cross-examination, or how persuasive the evidence regarding the prior case would have been to the jury. Indeed, based on our review of the record, a jury could reasonably determine—even in light of the Government's evidence outlined above, much of which is subject to innocent explanation—that the fact that thirty-four pounds of marijuana were found in duffle bags in the sleeping compartment of a truck owned by Mr. Gomez just a few months prior to the Defendants' arrests for nearly identical conduct was not merely coincidental. Rather, the prior incident could be

---

[2]Although Mr. Montelongo disputes the following, the Government presented evidence that, while being held in a detention center in Dona Ana County, Mr. Montelongo told an officer that "McCalvin had no knowledge of what was in [the sleeping compartment]," which, the Government argues, is an implicit admission that Mr. Montelongo himself had knowledge of the presence of marijuana.

viewed as compelling evidence that Mr. Gomez, and only Mr. Gomez, hid and knew about the marijuana in the truck driven by Mr. Montelongo and Mr. McCalvin. In other words, there is not such overwhelming evidence of guilt in this case that compels us to uphold the jury's verdict.

In addition, even if this evidence did not tend to show that Mr. Gomez acted alone, i.e., that Mr. Montelongo and/or Mr. McCalvin did in fact know about the hidden contraband, we underscore that this was not the Government's theory of the case. To the contrary, the Government proceeded on the premise that Mr. Gomez had nothing whatsoever to do with the marijuana found in the truck. Evidence that one of Mr. Gomez's trucks in the past had also been found to contain a significant amount of marijuana stored in duffle bags in the sleeping compartment, therefore, might have been able to cast sufficient doubt on the Government's theory of the case such that the jury might have acquitted the Defendants.[3]

In sum, we simply are not persuaded by the Government's assertion that evidence of the previous marijuana incident only "tended to prove that Gomez did not choose his drivers well." The Government's burden in this case is a

---

[3]We also note that the while the jury exonerated Mr. Montelongo of conspiracy, it found Mr. McCalvin guilty of the same charge. Although the jury, in returning a guilty verdict, need not indicate who it found Mr. McCalvin to conspire with, this unusual finding supports our conclusion that the exclusion of evidence was not harmless beyond a reasonable doubt.

substantial one, and our review of the record compels the conclusion that the Government has not shown beyond a reasonable doubt that the jury would have returned the same verdict had it known that another of Mr. Gomez's trucks was similarly found to have a cache of marijuana hidden in duffle bags in the sleeping compartment just months before the incidents giving rise to this case. We therefore must reverse and remand for a new trial.

## IV. CONCLUSION

Because the District Court erred in excluding cross-examination of Mr. Gomez in regard to the Brown case and because the Government has not established that the error is harmless beyond a reasonable doubt, we REVERSE and REMAND.