**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

## PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                                      No. 07-1318

NATHANIEL J. TURNER,

    Defendant-Appellant.

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 06-CR-298-LTB)**

Peter R. Bornstein of Denver, Colorado, for Defendant-Appellant.

Martha A. Paluch, Assistant United States Attorney (Troy A. Eid, United States
Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.

Before **HARTZ**, **HOLLOWAY** and **SEYMOUR**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Nathaniel J. Turner appeals his conviction for possession of ammunition by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). Mr. Turner argues that the district court erred by: (1) denying his motion to suppress, (2) failing to instruct the jury properly on the law of possession, and (3) limiting his ability to cross-examine a key witness on a specific matter. We affirm.

## I.

At approximately 2:00 p.m. on July 20, 2006, Aurora Police Department ("APD") narcotics investigators began undercover surveillance on Mr. Turner's residence in southeast Denver, Colorado. They targeted Mr. Turner, a convicted felon, because of suspected narcotics trafficking.[1] About thirty minutes into the surveillance operation, Mr. Turner emerged from his residence, entered a blue Trans Am, and drove to the parking lot of a Wal-Mart store. He exited the Trans Am, retrieved roof panels from the back seat of the vehicle, and closed the vehicle's roof. He then reentered the Trans Am, waited a few seconds, and drove to a nearby McDonald's restaurant.

Once in the McDonald's parking lot, Mr. Turner sat alone in the vehicle for

---

[1] On March 22, 2006, APD narcotics investigators had discovered approximately five ounces of crack cocaine and a firearm in a vehicle Mr. Turner had been driving. Mr. Turner was not arrested in connection with this incident.

five to ten minutes until a blue Isuzu Rodeo arrived and parked immediately next to him. A man later determined to be Rodney Rucker exited the Rodeo and entered the Trans Am through the front passenger door. He carried a white plastic bag similar to a grocery sack. After approximately five minutes, Mr. Rucker exited the Trans Am without the white plastic bag, reentered his own vehicle, and drove away. Mr. Turner left the parking lot a minute or two later. Because the investigators believed that a drug transaction had taken place and that the white plastic bag contained contraband, they continued to follow Mr. Turner.

Mr. Turner stopped at a gas station, entered and appeared to purchase a drink, returned to the Trans Am, and drove away. He soon began to drive erratically – speeding, weaving between traffic, going through red lights, and making abrupt turns. The APD investigators knew that Mr. Turner had a suspended Colorado driver's license, and they continued to follow him as he drove across Denver.

During this pursuit, lead APD Investigator Jason Klingler contacted the Denver Police Department ("DPD") and requested assistance from marked patrol units. At approximately 4:00 pm, Mr. Turner parked at a strip club. He exited the Trans Am and was immediately approached by uniformed DPD officers. The DPD officers ordered Mr. Turner to stop, placed him in handcuffs, conducted a pat-down search of his person, and questioned him about the ownership of the Trans Am. Mr. Turner stated that the Trans Am was not his, and that he did not

-3-

know who owned it.[2]  The DPD officers arrested Mr. Turner for driving with a suspended license, a misdemeanor offense carrying a minimum penalty of five days imprisonment.  *See* Colo. Rev. Stat. § 42-2-138.  Under DPD policy, they had discretion to issue Mr. Turner a summons or to seek jail time for his offense.

The APD investigators searched the Trans Am and found a white plastic Wal-Mart bag in the back of the car behind the two front seats.  The bag contained a box of Winchester .38 caliber ammunition.  The bag also contained a Wal-Mart receipt time-stamped during the time frame of the APD's surveillance of Mr. Turner that day.

Following the discovery of the ammunition, Investigator Klingler phoned the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and was told that authorities would file a federal complaint against Mr. Turner for possession of the ammunition.  DPD decided that it would not charge Mr. Turner with driving under suspension in light of the forthcoming federal complaint.  Accordingly, they transferred custody of Mr. Turner to APD, which took him to the Aurora Municipal Jail to await the federal charge.  Three and a half hours later, APD received a faxed copy of the federal complaint and arrest warrant against Mr. Turner for possession of the .38 caliber ammunition.

---

[2] Mr. Turner had no proof of insurance or registration for the vehicle.  In addition, the Trans Am displayed license plates that were not registered to the vehicle.

Mr. Turner made several unsolicited statements following his arrest. He initially asked Investigator Klingler why he was being arrested. The investigator advised Mr. Turner that he was driving without a license and had ammunition in his vehicle. Mr. Turner responded, "I've been scared" and "I needed to protect myself." He stated that he knew APD had been following him, and that he had been receiving medical treatment for paranoia. He told Investigator Klingler, "I should be angry that you caught me and that I'm going back to the pen for who knows how long, but I'm looking at you right now like you are my guardian angel."

**The Motion to Suppress**

Before trial, Mr. Turner sought to suppress the .38 caliber ammunition and his post-arrest statements. He did not challenge the legality of the initial traffic stop, but instead argued that the officers lacked probable cause to arrest him and to search the Trans Am. He also argued that his post-arrest statements were the fruits of an illegal arrest.

Following a lengthy suppression hearing, the district court entered an order denying Mr. Turner's motion. It found that DPD had probable cause to arrest Mr. Turner, concluding that the officers had reason to believe (1) that a drug transaction had occurred, and that (2) Mr. Turner was driving under suspension in a possibly stolen vehicle. The court determined that whether DPD policy permitted the officers to arrest Mr. Turner for driving under suspension was

irrelevant because the officers had authority to arrest him pursuant to Colo. Rev. Stat. § 16-3-102(1)(b) ("A peace officer may arrest a person when . . . [a]ny crime has been or is being committed by such person in his presence . . . ."). Moreover, under *Whren v. United States*, 517 U.S. 806, 815 (1996), Fourth Amendment search and seizure protections do not turn on local law enforcement policies. Consequently, the court concluded that the officers lawfully searched the passenger compartment of the Trans Am incident to a valid arrest, and that Mr. Turner's post-arrest statements did not qualify as fruits of an illegal seizure.

**The Motion *in Limine***

Four days before trial, the government learned that defense counsel intended to impeach Mr. Rucker, a key witness, with an ATF Seized Asset Claim form he had signed. The ATF form contradicted Mr. Rucker's testimony that he had purchased the ammunition for Mr. Turner at Mr. Turner's request. The form stated that Mr. Rucker owned the .38 caliber ammunition and wanted the bullets to be returned or discarded. Thus, defense counsel sought to use the form to show that Mr. Rucker purchased the .38 caliber ammunition for himself — not Mr. Turner — and that Mr. Rucker inadvertently left the ammunition in the Trans Am following Mr. Turner's purchase of a bag of marijuana.[3] Mr. Turner's attorney admitted to assisting in the completion and submission of the form.

---

[3] DPD found a small bag of what appeared to be marijuana during its search of Mr. Turner's person.

-6-

The government filed a motion *in limine* seeking to exclude the ATF form and all associated testimony. Mr. Rucker and defense counsel disputed the circumstances surrounding the creation of the form. The government asserted Mr. Rucker claimed that he signed the form because of pressure by defense counsel. Defense counsel did not dispute the government's claim that the form was in defense counsel's handwriting, but contended it reflected statements made to him by Mr. Rucker. Rec., vol. IV at 45. The government argued that admission of the form would create a serious risk of mistrial because defense counsel would make his own credibility a central issue at trial. Defense counsel responded that he would avoid this conflict by not challenging Mr. Rucker's version of the events surrounding the creation of the form.

The district court granted the government's *in limine* motion on the morning of trial. *See id.* at 5. The court found that if defense counsel were allowed to question Mr. Rucker about the ATF form, counsel would inevitably interject his credibility as an issue at trial. The court noted that "the circumstances giving rise to this issue were instigated and constructed by defense counsel." *Id.* at 6. Moreover, the court held that any probative value of Mr. Rucker's impeachment would be substantially outweighed by the danger of confusion of the issues and misleading of the jury under Rule 403 of the Federal Rules of Evidence. Defense counsel did not seek to withdraw from representation or request appointment of replacement counsel to facilitate the cross-examination

of Mr. Rucker regarding the ATF form.

## The Jury Instruction Regarding Possession

The district court instructed the jury on the law of possession, modeling its instructions after the Tenth Circuit Pattern Instructions. *See* Tenth Circuit Pattern Criminal Jury Instruction 1.31, Actual or Constructive Possession (2006). The court gave the following possession instruction:

> The law recognizes two kinds of possession: actual and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.

> More than one person can be in possession of an object if each knows of its presence and has the power to control it. A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely being present with others who have possession of the object does not constitute possession.

> Proximity to the object alone is not sufficient to establish knowledge of and access to the object. Instead, in this situation, in addition to proximity, the government must prove by direct or circumstantial evidence some connection between the particular defendant and the object. When combined with other evidence linking the defendant to the object, proximity is relevant evidence that may be considered in deciding whether the defendant had knowledge of and access to the object.

Rec. vol. I, doc. 67-3 at 14.

Mr. Turner's proposed possession instruction, also derived from the Tenth

Circuit Pattern Instructions, varied from the district court's instruction only with respect to the third and fourth paragraphs. The proposed third and fourth paragraphs read:

> In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the particular defendant and the object.
>
> In addition, momentary or transitory control of an object is not possession. You should not find that the defendant possessed the object if he possessed it only momentarily, or did not know that he possessed it.

Rec. vol. I, doc. 58 at 10. Mr. Turner contended these instructions were vital to his theory of the case. If the jury believed that Mr. Rucker had merely tossed the white bag into the back seat and left it, the issue of whether Mr. Turner had constructive possession of the ammunition might arise, notwithstanding the fact that Mr. Turner was alone when he was apprehended. The district court was not convinced by Mr. Turner's argument and included only a modified "joint occupancy" instruction.

Mr. Turner appeals the district court's rulings with respect to the two pretrial motions and his requested jury instructions. We address each issue in turn.

## II.

In assessing whether the district court erred in denying Mr. Turner's motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous. *United States v. Carter*, 511 F.3d 1264, 1267 (10th Cir. 2008). We apply *de novo* review to the district court's determination of reasonableness under the Fourth Amendment. *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008). The government carries the burden of demonstrating reasonableness. *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1305 (10th Cir. 2006).

Mr. Turner challenges the district court's denial of his motion to suppress on two grounds. First, he challenges DPD's actions after the search incident to his arrest.[4] He argues that once DPD determined it was not going to charge him with any offense, it no longer had probable cause to continue his arrest or to seize the white plastic bag and its contents. According to Mr. Turner, what was initially reasonable became unreasonable when the probable cause for his arrest ceased to provide the legal justification for further police action. In other words, after officers learned the bag did not contain narcotics, probable cause to arrest

---

[4] Mr. Turner concedes that DPD had probable cause for his initial arrest and, hence, could conduct a search incident to that arrest. Likewise, the government does not dispute that once DPD learned that the white plastic bag did not contain narcotics, it no longer had probable cause to arrest Mr. Turner on this basis.

-10-

dissipated and DPD was required to release Mr. Turner and to return the bag and its contents to the vehicle. In making this argument, Mr. Turner relies on the fact that possession of ammunition is neither a crime nor contraband under state law, and therefore officials needed a warrant before it could be lawfully seized.

We are not persuaded by Mr. Turner's largely unsupported argument. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) ("Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime."). In *Devenpeck*, 543 U.S. at 152-53, the Supreme Court rejected a reading of the Fourth Amendment that would require a connection between the offense establishing probable cause and the offense identified at the time of the arrest. The Court explained that the subjective intent of the officer – *i.e.*, his reason for making the arrest – cannot be used to invalidate an otherwise legitimate arrest. *Id.* at 153-55. The correct inquiry is rather whether "the facts known to the arresting officers give probable cause to arrest." *Id.* at 155. Mr. Turner challenges his arrest on the basis that officers no longer had probable cause to believe he possessed narcotics and they were therefore prohibited from proceeding further with an arrest for some other

-11-

crime (i.e., driving under suspension). Defendant does not cite any authority for this proposition.[5] As *Devenpeck* made clear, the probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime – any crime – occurred. *Id.* at 153.

Probable cause did not vanish simply because DPD – after learning of the impending federal complaint – elected not to charge Mr. Turner. To the contrary, there was probable cause to arrest Mr. Turner for driving under suspension, and there was additional legal justification to continue Mr. Turner's arrest with the discovery of the .38 caliber ammunition. *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [the defendant] on *some* ground." (emphasis in original)). Accepting defendant's argument would require invalidating warrantless arrests whenever the police arrest the suspect for a crime other than the crime they originally believed the suspect to have committed. Such a result would contradict the reality that

---

[5] Mr. Turner cites *United States v. Edwards*, 242 F.3d 928 (10th Cir. 2001) in his reply brief. While that case did hypothesize that "if the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal," it did not suggest that this rule applied to situations where police have probable cause for another crime, and it ultimately concluded that the arrest was lawful because police had probable cause to believe *a* crime had occurred. *Id.* at 934, 935. In short, *Edwards* does not support defendant's argument that his arrest became unlawful once there was no longer probable cause to believe he engaged in an illegal narcotics transaction.

officers often discover new evidence of criminal activity in the process of making an arrest and conducting a search pursuant to the arrest. Mr. Turner's argument fails.

Second, Mr. Turner challenges APD's authority under state law to arrest him. He contends that because APD did not have jurisdictional authority to arrest him for driving under suspension in Denver or possessing a stolen vehicle there, APD had no probable cause to continue his arrest and/or to seize the ammunition. According to Mr. Turner, the only crime for which the authorities had probable cause was that of being a felon in possession of ammunition, which is not a crime under state law. He argues that neither federal nor state law authorizes local law enforcement to arrest for violations of federal criminal statutes such as 18 U.S.C. § 922(g)(1). Mr. Turner contends that an arrest by local officers for a violation of federal law must be authorized by state law absent clear authorization from Congress.[6]

The United States Supreme Court's recent decision in *Virginia v. Moore*, 128 S. Ct. 1598 (2008), directly addresses Mr. Turner's challenge. The Court held that when police officers have probable cause to believe a person has

---

[6] Finally, Mr. Turner challenges his detention by APD pending the filing of a federal complaint. He contends the officers had no authority to hold him for more than three and a half hours until the federal warrant was issued. We reject this argument. As we have explained, law enforcement officers had probable cause to believe that Mr. Turner committed an offense, and his brief detention was reasonable under the circumstances.

-13-

committed a crime in their presence, the Fourth Amendment permits a warrantless arrest – and a search incident to that arrest – regardless of whether the crime qualifies as an arrestable offense under applicable state law. *Id.* at 1608.[7] The Court relied on and extended *Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001), where it held that warrantless arrests for minor misdemeanors punishable only by a fine do not violate the Fourth Amendment. The Court reiterated that the constitutional reasonableness of a search or seizure does not depend upon the law of the state in which the search or seizure occurred. *See Moore*, 128 S. Ct. at 1602-05. "[W]hile States are free to regulate [] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 1607. The Court concluded that because the police officers had probable cause to arrest the defendant and to search him incident to his arrest, there was no Fourth Amendment violation. *See id.* at 1608.

In light of *Moore*, whether APD had authority under Colorado law to arrest Mr. Turner is irrelevant. *Moore* makes clear that if officers have probable cause to believe that a crime has been committed in their presence, they may arrest and

---

[7] In *Moore*, police officers arrested the defendant for driving with a suspended license and subsequently found crack cocaine on his person. *Id.* at 1601. The officers did not have authority under state law to arrest the defendant for the misdemeanor offense of driving with a suspended license. *Id.* at 1602. The defendant was ultimately charged with possession of cocaine with the intent to distribute in violation of state law. *Id.* The defendant sought to suppress the evidence on the ground that his arrest violated state law and thus violated the Fourth Amendment.

search incident to that arrest without violating the Fourth Amendment, even if such police action is not authorized by state law. *Id.* at 1608. In other words, state law does not determine the reasonableness of a seizure under the Fourth Amendment. *Id.* at 1605. We recently applied *Moore* in *United States v. Gonzales*, 535 F.3d 1174, 1183 (10th Cir. 2008), which is directly on point here. In that case, we held that police officers' traffic stop of the defendant, outside of their jurisdiction and in violation of Colorado law, did not violate the Fourth Amendment. *See id.* at 1182-83.

Relying on *United States v. Di Re*, 332 U.S. 581 (1948), Mr. Turner argues that the constitutionality of his arrest for violating a federal statute depends on Colorado law. *Di Re* held that "in [the] absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity." 332 U.S. at 589. *Moore* explicitly limited *Di Re*'s application to the extent that *Di Re* – based on federal supervisory power and not the Fourth Amendment – remains good law. *Moore* explained, "[n]either *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment . . . ." 128 S. Ct. at 1605.

Accordingly, because arrests made in violation of state law are not *per se* unreasonable under the Fourth Amendment, it does not matter for the purposes of our analysis whether APD had jurisdictional authority under state law, as long as the officers' actions were otherwise reasonable. *See Gonzales*, 535 F.3d at 1182

-15-

("A state-law violation does not . . . necessarily rise to the level of a federal constitutional violation."). Likewise, we reject Mr. Turner's claim that because possession of ammunition is not a crime under state law, state law enforcement could not seize the ammunition and detain him on that basis. Even if state law prohibits state police from arresting for a federal offense (and we are not convinced that it does), that fact alone does not render the arrest a violation of the Fourth Amendment. *See id.; Moore*, 128 S. Ct. at 1608.

In sum, the district court properly denied Mr. Turner's motion to suppress. APD's challenged police action did not violate the Fourth Amendment even assuming it did violate Colorado law, which we need not decide. Mr. Turner's post-arrest statements are therefore not "fruits of the poisonous tree." *See generally United States v. Pettigrew*, 468 F.3d 626, 634 (10th Cir. 2006) (noting that the "fruit of the poisonous tree" doctrine only excludes evidence "obtained directly or indirectly through an unlawful search or seizure.").

## III.

Mr. Turner also contends the district court erred in refusing to give his proposed jury instructions regarding "joint occupancy" and "momentary or transitory control." Aplt. Br. at 19. We review the district court's refusal to give the instructions requested by a party for abuse of discretion. *United States v. Moran*, 503 F.3d 1135, 1146 (10th Cir. 2007). A district court properly exercises

-16-

its discretion if the jury instructions as a whole "correctly state the governing law and provide an ample understanding of the issues and the applicable standards." *Gonzales*, 535 F.3d at 1179 (internal quotation marks omitted). A district court must give a requested instruction on a defendant's theory of the case "if the instruction is a correct statement of the law," and the defendant "has offered sufficient evidence for the jury to find in his favor." *United States v. Pinson*, 542 F.3d 822 (10th Cir. 2008). We reverse only if prejudice results from a court's refusal to give a requested instruction. *See United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998) ("We reverse only if we have a substantial doubt that the jury instructions properly guided the jury in its deliberations *and* we find prejudice." (emphasis in original)).

Mr. Turner asserts the district court's possession instruction misled the jury in two "serious and substantial" ways. Reply Br. at 11. First, he contends the district court's own "joint occupancy" instruction failed to inform the jury that it could not infer control merely because he and Mr. Rucker were in the car at the same time. He argues that his proposed instruction was vital because "there was no evidence that Mr. Turner [] had an opportunity to look in the bag and know the contents before his arrest." Reply Br. at 11. According to Mr. Turner, the district court's joint occupancy instruction is worded in such a way as to suggest an inference of constructive possession.

To prove constructive possession under 18 U.S.C. § 922(g)(1), the

-17-

government had to show, *inter alia*, that Mr. Turner had knowledge of and access to the ammunition. *See United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007) ("We have held that *knowledge* and *access* are required to prove that [a] defendant knowingly held the power to exercise dominion and control over [a] firearm." (alterations and emphasis in original)); *United States v. Ledford*, 443 F.3d 702, 714 (10th Cir. 2006) (noting that constructive possession conviction requires "a plausible inference that the defendant had knowledge of and access to the [illicit item]") (internal quotation marks omitted). In the case of joint occupancy, the government could not prove knowledge and access by the fact of Mr. Turner's proximity to the ammunition alone. *Jameson*, 478 F.3d at 1209; *see Ledford*, 443 F.3d at 713 (noting that joint occupancy alone cannot establish an inference of possession). It must show some additional "connection or nexus between the defendant and the [ammunition]." *Jameson*, 478 F.3d at 1209.

The district court's mere failure to use the precise language defendant requested did not render its instruction invalid. The court had discretion to modify the wording of the jury instructions to fit the unique facts of the case, so long as the instructions as a whole complied with the substance of the applicable law. *See id.* at 1211 n.1 ("[T]he particular form of words required for any particular instruction in any particular case may vary depending on the particular facts, but, in every case, the instruction as a whole must convey the correct statement of the applicable law."). The district court's "joint occupancy"

instruction made clear that the jury could not infer possession merely because Mr.
Turner and Mr. Rucker had briefly co-occupied the Trans Am. Thus, as we have
noted, the court instructed:

> More than one person can be in possession of an object if each knows
> of its presence and has the power to control it. A defendant has joint
> possession of an object when two or more persons share actual or
> constructive possession of it. *However, merely being present with*
> *others who have possession of the object does not constitute*
> *possession.*

Rec. vol. I, doc. 67-3 at 14 (emphasis added). The instruction made equally clear
that proximity alone could not establish knowledge of and access to the
ammunition:

> *Proximity to the object alone is not sufficient to establish knowledge*
> *of and access to the object.* Instead, in this situation, *in addition to*
> *proximity, the government must prove by direct or circumstantial*
> *evidence some connection between the particular defendant and the*
> *object.* When combined with other evidence linking the defendant to
> the object, proximity is relevant evidence that may be considered in
> deciding whether the defendant had knowledge of and access to the
> object.

*Id.* (emphasis added). Because the district court's "joint occupancy" instruction
complied with the substance of the law, we conclude that it did not mislead the
jury.

Second, Mr. Turner contends the district court failed to instruct the jury
that it could not infer constructive possession if Mr. Turner had only momentary
or transitory control over the ammunition. He claims he had "transitory" control
because he was traveling from place to place, and he had "momentary" control

-19-

because his possession of the bag did not last "a couple of hours or more." Aplt. Br. at 20.

Mr. Turner is wrong. A conviction under 18 U.S.C. § 922(g)(1) does not require evidence of a lengthy possession. *United States v. Williams*, 403 F.3d 1188, 1194 (10th Cir. 2005). Control over ammunition "for a mere second or two" is legally sufficient as long as the defendant has knowledge of possession. *See id.*; *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999). Moreover, we have never suggested that a conviction under § 922(g)(1) requires continual control in one place.

In light of this standard, Mr. Turner did not present sufficient evidence to support a "momentary or transitory control" instruction. *See Adkins*, 196 F.3d at 1115 ("[T]he court need only give a fleeting possession instruction when the evidence at trial supports a possible finding that the defendant only momentarily possessed the contraband, and in so doing, lacked either knowledge he possessed contraband or criminal intent to possess it."). He did not control the ammunition at the last minute or merely in passing; rather, he drove all over Denver with it. Consequently, the district court did not err in refusing Mr. Turner's proposed instructions.

**IV.**

Finally, Mr. Turner asserts that the district court erred in precluding the cross-examination of Mr. Rucker regarding the ATF form. We review *de novo* whether cross-examination limitations infringe a defendant's Sixth Amendment right to confrontation. *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005); *United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir. 2005); *United States v. Sarracino*, 340 F.3d 1148, 1167 (10th Cir. 2003). We ask, first, whether the district court erred and, second, whether such error was harmless beyond a reasonable doubt. *Montelongo*, 420 F.3d at 1173; *Sarracino*, 340 F.3d at 1167. If an error is harmless, we will not reverse. *See Montelongo*, 420 F.3d at 1173.

Mr. Turner claims that the district court's limitation on cross-examination infringed his Sixth Amendment rights to confrontation and to the effective assistance of counsel.[8] According to Mr. Turner, "the denial of effective cross-examination and the preclusion of an entire line of cross-examination going to Mr. Rucker's credibility warrants a new trial." Reply Br. at 14. Mr. Turner

---

[8] We do not address Mr. Turner's conclusory assertion of ineffective assistance of counsel. As we have often held, such claims are best addressed collaterally rather than on direct appeal. *See, e.g.*, *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). Nor do we address the separate question of whether the district court committed non-constitutional error, as Mr. Turner does not assert error on any basis other than the Sixth Amendment. *Compare Dowlin*, 408 F.3d at 661 n.6.

argues that because Mr. Rucker's credibility was critical to the defense theory of the case, the district court's exclusion of the ATF form and associated testimony substantially affected the jury's assessment of the evidence.

The Sixth Amendment guarantees a right to cross-examine adverse witnesses. *Montelongo*, 420 F.3d at 1173. This right to confrontation is not absolute, however. *Id.* "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). While the "right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination[,]" *Parker v. Scott*, 394 F.3d 1302, 1316 (10th Cir. 2005), the presentation of evidence nevertheless "must comply with established rules of evidence and procedure," *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). The Sixth Amendment does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679. In sum, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in *otherwise appropriate cross-examination* designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors could appropriately draw inferences relating to

-22-

the reliability of the witness.'" *Id.* at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)) (emphasis added and alteration omitted).

At trial, Mr. Rucker testified that he purchased the bullets at Mr. Turner's request. At issue here is an ATF form signed by Mr. Rucker stating, "I bought the ammunition at Wal-Mart, so it is mine and I want it back or just throw it away." Rec. vol. V, attach. 1. The government contends that defense counsel arranged the meeting with Mr. Rucker and advised him to complete the form because he had a better chance of getting the ammunition back and because it might help resolve the case against Mr. Turner. Mr. Turner does not respond to these specific allegations in his brief, and his counsel admits that the form was completed at his office and in his handwriting.

Under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." While we recognize that cross-examination regarding a prior inconsistent statement is relevant and is usually admissible for impeachment, we also realize that the circumstances here were unique. The probative value of Mr. Rucker's impeachment was substantially outweighed by the danger of confusing defense counsel's credibility with Mr. Turner's guilt. In other words, the narrow line of excluded cross-examination was not "otherwise appropriate." *Van Arsdall*, 475 U.S. at 680.

Defendant's proposed alternatives would not have remedied these concerns. *Cf. United States v. Calabrese*, 645 F.2d 1379, 1383 (10th Cir. 1981) (noting that neither substitution of counsel nor limiting the scope of cross-examination would have removed the ethical issues presented by introducing testimony regarding affidavit prepared by defense counsel). Had the district court denied the motion *in limine*, defense counsel would have asked Mr. Rucker about his statement on the ATF form. Even if defense counsel had agreed not to ask Mr. Rucker about the circumstances surrounding the creation of the form, the government still would have had every right on re-direct to question Mr. Rucker about those circumstances. If Mr. Rucker had testified that defense counsel misled him about the ATF form, defense counsel's credibility inevitably would have become an issue at trial, with a mistrial the probable result. *See id.* at 1383-84 (concluding there was manifest necessity for a mistrial – and therefore retrial was not barred – where counsel attempted to impeach a witness using an affidavit he had prepared); *United States v. Givens*, 88 F.3d 608, 611-12 (8th Cir. 1998) (same where defense counsel sought to impeach witness by testifying as to their conversation); *United States v. Arrington*, 867 F.2d 122, 124-26 (2d Cir. 1989) (same where defendant sought to call co-defendant's counsel to testify regarding affidavit signed by key witness during meeting with counsel); *United States v. Kwang Fu Peng*, 766 F.2d 82, 83-86 (2d Cir. 1985) (same where defense counsel sought to impeach witness by testifying about a meeting with witness).

-24-

Upon mistrial, the problem would still exist. It would be a strange result for this court to conclude that the district court committed error in excluding the evidence, while at the same time predicting error would have resulted from permitting the testimony regarding the ATF form. We note that the district court could have permitted cross-examination of Mr. Rucker regarding the ATF form if defense counsel had withdrawn from the case and requested appointment of replacement counsel. Counsel did not do so, however, and cannot now fault the district court for not ordering counsel off the case.

Defense counsel was still able to cross-examine Mr. Rucker about possible bias and any deal he may have received from the prosecution in exchange for his testimony. *See United States v. Geames*, 427 F.3d 1333, 1338-39 (10th Cir. 2005) (holding defendant's right to cross-examine witness not materially hindered because jury learned of witness's prior bad acts and motivation to cooperate with the government through other testimony). Accordingly, "the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *Id.* at 1338. We hold that the district court's decision to exclude the ATF form

did not violate Mr. Turner's Sixth Amendment right to confrontation.[9]

<br>

V.

For the reasons set forth above, we **AFFIRM** Mr. Turner's conviction.

---

[9] We note, moreover, that the impeachment testimony would have gone only to Mr. Rucker's credibility and not to Mr. Turner's guilt or innocence. As we have pointed out, mere knowledge of and access to the ammunition – not ownership – was all that was required to convict Mr. Turner for possession. Hence, if the jury otherwise believed that Mr. Turner knew of the contents of the white plastic bag, whether or not Mr. Rucker claimed ownership of the ammunition was irrelevant to the outcome. Mr. Turner's comments after he was arrested that "I've been scared," "I needed to protect myself," and "I should be angry that you caught me and that I'm going back to the pen for who knows how long, but I'm looking at you right now like you are my guardian angel", *see supra* at 5, no doubt helped convince the jury that he knew about the ammunition in the bag Mr. Rucker left in the car.