FILED
United States Court of Appeals
Tenth Circuit

October 16, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN M. SIGG; MITCHELL SIGG,

Plaintiffs - Appellants,

v.

ALLEN COUNTY, KANSAS, BOARD
OF COUNTY COMMISSIONERS;
BRYAN J. MURPHY, Allen County
Sheriff, individually and in his official
capacity,

Defendants - Appellees.

No. 16-3360
(D.C. No. 6:15-CV-01007-EFM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PHILLIPS**, **McKAY**, and **McHUGH**, Circuit Judges.

---

On the evening of February 2, 2013, Plaintiff John Sigg, while driving a vehicle

from the inventory of his employer, a used car dealership, was pulled over for driving

with a malfunctioning headlight. The events were recorded on camera. Deputy Jarod

Tingley of the Allen County Sheriff's Department, accompanied by Deputy Jason Kegler,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

performed the traffic stop. After Deputy Tingley walked to the side of John's vehicle, John explained to Deputy Tingley that the car was a dealer vehicle. As Deputy Tingley ran the vehicle's tag, John got out of the vehicle to check the headlight before returning to the driver's seat. Deputy Tingley returned to the vehicle and requested proof of insurance, which John was unable to provide.

Deputy Tingley issued a citation for driving without proof of insurance. After explaining the citation to John, Deputy Tingley asked for John to sign it: "What I need for you to do is sign by the 'x' where I have circled, by signing you are not stating that you are guilty or anything, just promising to appear in court on the 6th of March." John asked, "You are giving me a ticket?" Deputy Tingley answered, "Yes . . . I don't have a choice. The state says I have to." John attempted to open the car door but Deputy Tingley quickly shut it, telling him, "Nope, stay in the car." Deputy Tingley asked John, "Are you going to sign the citation for me?" John sat silently, staring forward for five seconds before he responded: "And if I don't?" "You're going to go to jail." John sat in silence again for about ten seconds. Deputy Tingley: "Are you willing to sign the citation?" Again, John did not respond. He continued to stare silently into the distance for about ten more seconds. The silence was broken when Deputy Tingley told John to "Step on out." As he attempted to open the car door, Deputy Tingley advised John that he was under arrest. John finally spoke: "Are you [sic] kidding me, let me sign the f***ing thing." "Nope, you're under arrest," Deputy Tingley replied. Deputy Tingley then had John exit the vehicle, and he began to place John in handcuffs.

At some point during the traffic stop, John used his cellphone to tell his father, Plaintiff Mitchell Sigg, that he had been pulled over. For whatever reason, Mitchell decided to drive to the scene, and he arrived as Deputy Tingley was placing John in handcuffs. Mitchell parked his car behind the deputies' vehicle on the side of the road, and advanced toward the deputies, yelling "What the f*** are you doing idiot? What the f*** are you doing?" Deputy Kegler blocked Mitchell from getting any closer. Mitchell responded: "No, you dumb mother f***er." Turning to Deputy Kegler, who is black, Mitchell continued: "Hey stupid, get your f***ing hands off me boy. Boy. Yeah I know who you are, you don't f*** with me." Deputy Tingley instructed Deputy Kegler to "cuff him, he's going to jail." Deputy Kegler then began to place Mitchell in handcuffs. While being placed in handcuffs, Mitchell asked Deputy Tingley, "What the f*** is your name, boy?" After placing both Siggs under arrest, the deputies transported them to Allen County Jail. Ultimately, Mitchell was the only Sigg to be charged with a crime. He was charged with violating K.S.A. § 21-5904a(a)(3)—Interference with Law Enforcement in the Discharge of an Official Duty. He was acquitted.

Mitchell and John Sigg sued the Allen County Board of County Commissioners and Bryan Murphy, the Allen County Sheriff, under 42 U.S.C. § 1983, alleging that their Fourth and Fourteenth Amendment rights, and Mitchell's First Amendment rights, were violated as a result of the negligent supervision, training, and retention of Deputy Tingley. The Siggs have not sued Deputy Tingley directly. Both sides moved for summary judgment. The district court granted Defendants' motion, holding that the evidence showed that the Board and Sheriff Murphy did not act with deliberate

- 3 -

indifference with respect to the hiring, training, or supervision of Deputy Tingley, that Plaintiffs failed to demonstrate a custom or policy, and that Plaintiffs failed to present any evidence of causation between the negligent supervision and the alleged constitutional violation.

We, however, need not address issues of supervisory and *Monell* liability because Plaintiffs' claims fail at the outset. We may affirm on any ground supported by the record. *Richison v. Ernest Grp., Inc*., 634 F.3d 1123, 1130 (10th Cir. 2011). Absent an underlying constitutional violation, Allen County cannot be liable under *Monell*. *See Muskrat v. Deer Creek Pub. Sch*., 715 F.3d 775, 788 (10th Cir. 2013). Likewise, the failure to train and supervise claim against Sheriff Murphy fails without evidence of any constitutional violation. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution."). Thus, because the Siggs have not demonstrated any violation of their constitutional rights, Allen County and Sheriff Murphy cannot be held liable.

John Sigg claims that his arrest for driving without proof of insurance was unreasonable because Kansas law provides an exception to the general rule for vehicles offered for sale by dealers, like the vehicle John was driving. *See* K.S.A. § 40-3104(m). Thus, John asserts, Deputy Tingley did not have probable cause to believe John violated the law by failing to provide proof of insurance. This argument is unavailing. Even if Deputy Tingley did not have probable cause to arrest John for *that* crime, it is undisputed that Deputy Tingley had probable cause to believe John Sigg violated K.S.A. 8-

- 4 -

1703(a)(1) by driving a vehicle at night with a defective headlight. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The Fourth Amendment does not "forbid[ ] a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *Id*. at 323.

That Deputy Tingley arrested John Sigg for a crime he did not commit does not undermine the reasonableness of the arrest. An arresting officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). As long as the officer had reason to believe that any crime had occurred, probable cause exists to support the arrest. *United States v. Turner*, 553 F.3d 1337, 1344–45 (10th Cir. 2009) (citing *Devenpeck*). Deputy Tingley had probable cause to believe John committed *a* crime. Thus, John's claim must fail.

John's father, Mitchell Sigg, claims he was unlawfully seized in retaliation for protected speech. But Mitchell cannot prevail for the same reason as his son: the officers had probable cause. When Mitchell arrived, he got out of his car and advanced on Deputy Tingley, who was in the process of handcuffing John Sigg, shouting, "What the f*** are you doing idiot? What the f*** are you doing?" Deputy Tingley instructed Deputy Kegler to detain Mitchell. In response, Mitchell told Deputy Kegler, who is black, "Hey stupid, get your f***ing hands off me boy. Boy. Yeah I know who you are,

you don't f*** with me."  Deputy Tingley instructed Deputy Kegler to "cuff him, he's going to jail."

Mitchell Sigg was arrested (and charged) for interference with law enforcement. "Interference with law enforcement is . . . knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty."  *State v. Brown*, 387 P.3d 835, 848 (Kan. 2017) (quoting K.S.A. § 21-5904)(ellipsis in original).  The offense's elements are:  "(1) an identified law enforcement officer carrying out some official duty; (2) defendant knowingly and willfully obstructed or opposed the officer; and (3) defendant knew or should have known the person he opposed was a law enforcement officer."  *Id.* (internal quotation marks and brackets omitted).  "To obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means."  *Id*. at 848–49 (brackets omitted).  "It includes any passive, indirect or circuitous impediments to the service or execution of process; such as hindering or preventing an officer by not opening a door."  *Id*. at 849.  Based on the uncontroverted facts, there was at least probable cause to believe Mitchell violated this statute after he belligerently advanced on the officers during an arrest at night along the side of a highway.

We turn then to Mitchell's First Amendment retaliation claim.  To establish a § 1983 retaliation claim, a plaintiff must plead and prove:  (1) he was engaged in a constitutionally protected activity, (2) a defendant's action caused him to suffer an injury

that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) a defendant's action was substantially motivated as a response to his exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). He must also plead and prove the absence of probable cause for the arrest. *See id.* As discussed, Deputy Tingley had probable cause to arrest Mitchell Sigg. Therefore, Mitchell Sigg's First Amendment retaliation claim cannot survive summary judgment.

Accordingly, we **AFFIRM** the district court's order granting summary judgment for Defendants.

Entered for the Court


Monroe G. McKay
Circuit Judge