**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles Michael HINKLE, Defendant–Appellant.**

No. 93–5137.

United States Court of Appeals, Tenth Circuit.

Sept. 21, 1994.

Gordon B. Cecil, Asst. U.S. Atty. (Stephen C. Lewis, U.S. Atty., and Kevin C. Leitch, Asst. U.S. Atty., with him on the briefs), Tulsa, OK, for appellee.

Keith Ward (Ann Dooley, with him on the briefs) of Tilly & Ward, Tulsa, OK, for appellant.

Before ANDERSON and HOLLOWAY, Circuit Judges, and OWEN,* District Judge.

OWEN, District Judge.

Appellant, Charles Hinkle, practiced general dentistry in Tulsa, Oklahoma, from 1991 until January 11, 1993. On that date he was convicted of 134 counts of mail fraud and

---

* The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

conspiracy to commit mail fraud in violation of 18 U.S.C.. §§ 1341 and 371 on charges of misrepresenting and thereby overcharging for dental procedures in bills sent to his patients' dental insurance companies. He was sentenced to concurrent twelve months prison terms on all counts, and $27,553.71 in fines were imposed. Two employees indicted with him were acquitted.

The jury concluded that Hinkle mailed "super bills," or invoices to insurers, falsely claiming that he had performed procedures that were more time consuming and expensive than the ones actually performed. The procedures at issue are catalogued in a publication distributed by the American Dental Association, the *American Dental Association CDT–1 Current Dental Terminology, First Edition 1990–1995: A User's Manual*. This publication contains descriptions of dental procedures, assigning them identification numbers (ADA codes) to be used for invoices and records. As is customary in the profession, Dr. Hinkle utilized the ADA codes in his super bills to advise the insurance companies what he was seeking payment for.

Following a lengthy trial at which the prosecution called twenty-eight witnesses and introduced over 600 exhibits, the jury found that Hinkle performed prophylaxis on children and billed the insurance companies for more severe periodontal "root scaling," and performed applications of sealants on children's teeth while billing for more complex "composite resin restorations." The evidence was partly documentary—a comparison of the patients' records kept in his office and the super bills sent to the insurance companies—and partly testamentary. There was testimony that patient charts were altered to reflect more expensive procedures. Expert witnesses testified to finding no evidence that these procedures were performed on the patients in question. Hinkle endeavored to put the foregoing in dispute. He testified on his own behalf and called six witnesses.

On appeal, Hinkle asserts several grounds of reversal.

First, he contends that the evidence was insufficient to support the verdict. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781,·2789, 61 L.Ed.2d 560 (1979) (emphasis in· original). There was ample evidence to support the verdict, and we accept the jury's resolution of claimed conflicts in the evidence and their assessment of the credibility of witnesses. *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993).

■■■ The charge of mail fraud, 18 U.S.C. § 1341, requires proof of a scheme to defraud and use of the mails in furtherance of the scheme. *United States v. Allen*, 554 F.2d 398, 408 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977). The conspiracy charge, 18 U.S.C. § 371, requires proof of an agreement among two or more persons to commit an offense against the United States, an overt act in furtherance of the conspiracy, and knowing participation in the conspiracy by the defendant.

■■ The jury found beyond a reasonable doubt that Dr. Hinkle and some of his staff fraudulently billed for more expensive procedures than were actually performed. As earlier stated, the billings were for procedures designated and assigned numbers in the publication *American Dental Association CDT–1 Current Dental Terminology*. Hinkle's first attack is that the edition used on the trial, that of 1990–1995, had not been published at the time Hinkle did the billings at issue here. Hinkle argues that there are important differences between the 1991 edition used at trial and the 1987 edition in effect at the time Hinkle's super bills were prepared. However, the 1991 edition admitted at the trial without objection contains the identical code numbers and descriptions of all of the procedures that were at issue here—prophylaxis, scaling, sealant and resin—as did the 1987 version extant at the time Hinkle prepared the fraudulent super bills.[1] Significantly, no

---

1. 01110—Prophylaxis—adult
01120—Prophylaxis—child

04341—Periodontal scaling and root planing, per quadrant

revisions were indicated as to the relevant ADA procedure codes between the sixth revision to the code published in March 1987, and the seventh revision published in January and March 1991.

■ Accordingly, the jury received appropriate evidence concerning the nature of the dental procedures both as performed and as later billed and ADA's classification of such dental procedures applicable at all times involved in the charges. Further, Hinkle, in his testimony, having referred to and been questioned about the edition in evidence at the trial and having not taken issue with its accuracy or relevance at the time, cannot do so now.[2] Accordingly, the date of publications used on the trial of the ADA CDT–1 cannot now be claimed to cause a failure of proof. Hinkle's other attacks on the sufficiency of the evidence are no more than rearguments of credibility issues which the jury resolved against him.

Hinkle next contends that as to a major prosecution witness who had been treated by a psychiatrist, the district court abused its discretion in 1) declining to allow cross-examination about the witness' mental health; 2) refusing to permit the defense to obtain the said witness' psychiatric records; and 3) declining to permit the witness' psychiatrist to testify.[3] This, Hinkle claims, prevented him from attacking the witness' credibility, and violated his Sixth Amendment rights of confrontation and compulsory process to confront his accuser and to obtain witnesses in his favor.

■ The Sixth Amendment's Confrontation Clause guarantees the right to cross-examine witnesses, *Davis v. Alaska*, 415 U.S. 308, 315–17, 94 S.Ct. 1105, 1109–11, 39 L.Ed.2d 347 (1973), but the extent of cross-examination with respect to any appropriate subject is within the sound discretion of the trial court. *United States v. Valentine*, 706 F.2d 282, 288 (10th Cir.1983). An evidentiary ruling will be overturned on appeal only if the abuse of discretion suggests an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Boren v. Sable*, 887 F.2d 1032, 1033 (10th Cir.1989).

■ The district court excluded evidence that the witness was seeing a psychiatrist because the court saw nothing in the psychiatrist's file or in the testimony given by the psychiatrist *in camera* that suggested that the witness' credibility or perceptive capabilities were impaired. On the contrary, the psychiatrist testified that the witness had no tendency to hallucinate, perception of reality was not distorted, and the witness could distinguish between truth and falsehood. On the basis of this, the court below declined to permit the psychiatrist to testify before the jury. The court did allow a certain letter from the file to be used as a prior inconsistent statement to impeach her testimony, though the source of the statement was not to be disclosed.

The district court did not, however, rule out all testimony regarding the witness' mental health. Indeed, Hinkle's counsel could have cross-examined the witness generally on this issue but never did so, although he cross-examined extensively on issues of bias, malice and motive to lie.

In sum, the limitations imposed were well within the discretion of the trial court. In *Foster v. United States*, 282 F.2d 222, 224 (10th Cir.1960), we stated, "[I]n the last analysis the trial court is the governor of the trial with a duty to assure its proper conduct and the limits of cross examination necessarily lie within its discretion. And we should not overrule the exercise of that discretion unless we are convinced that the ruling of the court was prejudicial." Dr. Hinkle's defense was not impaired because the trial court kept

---

01351—Sealant—per tooth
02385—Resin—one surface, posterior permanent
The jury was given dental definitions for each of the foregoing in great detail.

2. Indeed, Hinkle's counsel cross-examined and examined other witnesses on the basis of its provisions.

3. The Court below, observing that this effort was nothing more than the attempt to stigmatize the witness before the jury as a psychiatric patient, conducted all proceedings on this issue *in camera* and the briefing in this court on this issue was also *in camera*. We accordingly maintain the anonymity of the witness in this opinion.

from the jury evidence that the witness had seen a psychiatrist.

We have considered Hinkle's further grounds for reversal and find them to be without merit.[4]  Accordingly, the judgment of conviction is affirmed.

4.  The defendant's motion to transfer *in camera*        pleadings is granted.