TYMKOVICH, Circuit Judge,
dissenting.
I respectfully dissent. Unlike the majority, I would hold that because Robinson did not adequately raise his Due Process Clause claim before the district court, it is subject to plain error review on appeal and fails that standard. I also disagree with the majority that the district court violated the Confrontation Clause when it precluded an inquiry into the confidential informant’s (Cl) mental health. Such an inquiry would have been more prejudicial than probative under Federal Rule of Evidence 403. Finally, although I agree with the majority that the district court erred in limiting Robinson’s cross-examination of *1277 the Cl regarding the prescription medications the Cl was taking, I conclude— based upon my review of the record — that the error was harmless and does not require reversal.
I. Due Process Claim
Robinson’s first argument on appeal is that the district court denied him due process under Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), when the court reviewed the Cl’s psychiatric records in camera before trial and denied Robinson access to those records. The government contends Robinson failed to raise this claim below, subjecting it to plain error review on appeal. The government further asserts that the claim fails to satisfy the plain error standard. I agree.
Robinson did not adequately apprise the district court of his due process claim, making only general arguments that lacked the requisite specificity. And because the district court’s decision to maintain the confidentiality of the CPs psychiatric records was not contrary to the well-settled law of Ritchie, Robinson’s due process claim falls short under plain error review.
A. Failure to Preserve the Due Process Claim
Under our jurisprudence, issues not properly raised in the trial court — including those that implicate a defendant’s rights under the Constitution — are reviewed under the deferential plain error standard. See United States v. Redcorn, 528 F.3d 727, 744 (10th Cir.2008) (reviewing a Brady due process claim for plain error). In order to properly raise an issue in the trial court and ensure the fullest possible review on appeal, a defendant must object with specificity, drawing the trial court’s attention to the precise claim advanced. The district court should not be required to guess at the defendant’s potential arguments: “Our precedent is clear that an objection must be ‘definite’ enough to indicate to the district court ‘the precise ground’ for a party’s complaint.... Absent a specific objection, the district court is deprived of the opportunity to correct its action in the first instance.” United States v. Winder, 557 F.3d 1129, 1136 (10th Cir. 2009) (internal citations omitted) (quoting Neu v. Grant, 548 F.2d 281, 287 (10th Cir.1977)), cert. denied, — U.S. -, 129 S.Ct. 2881, 174 L.Ed.2d 591 (2009); see also United States v. Garcia, 994 F.2d 1499, 1505 (10th Cir.1993) (“Defendant did not raise a specific objection based on the confrontation clause at trial. Thus, we review for plain error.”).
In his reply brief, Robinson concedes that “the issue [of disclosure of the Cl’s psychiatric records] may not have been squarely raised [in the trial court] under the rubric of Due Process.” Aplt. Reply Br. at 2. Despite this admission, the majority asserts that Robinson did, indeed, squarely raise the due process issue in his pre-trial motion to subpoena the Cl’s medical records and in his post-trial motion to inspect the records. My review of these motions convinces me otherwise.
Nowhere in the pre-trial motion does Robinson mention the phrase “due process.” The majority suggests Robinson’s citation of United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), should have put the district court on notice that due process concerns were at play. But Robinson cited Nixon only for the general standards governing the issuance of subpoenas under Federal Rule of Criminal Procedure 17: relevancy, admissibility, and specificity. See id. at 699-700, 94 S.Ct. 3090. And although Nixon tangentially discusses due process in the context of analyzing whether the President of the United States may assert a privilege and thereby quash a subpoena, see id. at *1278 711-12, 94 S.Ct. 3090, this does not mean the district court was apprised of Robinson’s due process claim. Merely citing a case, which may stand for many propositions of law, cannot amount to properly raising an objection with the requisite specificity to avoid plain error review on appeal. See Winder, 557 F.3d at 1136.
As for the post-trial motion for inspection, there again Robinson failed to specifically apprise the district court of his due process claim. He argued that the “denial of access to the records prevents counsel for Mr. Robinson from adequately arguing for a new trial.” R. Vol. 1, Doc. 72 at 1. He also asserted, without explanation, that “[t]o deny access to the documents is to deny the defendant his Sixth Amendment right to the effective assistance of counsel, and his right to Due Process of Law.” Id. at 2. These “blanket objections” are precisely the kind that lack the “specificity required to preserve the precise issue ... on appeal.” Winder, 557 F.3d at 1136 (quoting United States v. Bedford, 536 F.3d 1148, 1153 n. 4 (10th Cir.2008), cert. denied, — U.S. -, 129 S.Ct. 1359, 173 L.Ed.2d 620 (2009)). Due process is an expansive topic, and nothing in Robinson’s cursory statements suggest he was arguing for the type of relief contemplated by Ritchie. Furthermore, in Robinson’s motion for a new trial, he confined his arguments to the Confrontation Clause. This shows that Robinson’s general and cursory arguments in the post-trial motion for inspection — which, if granted, would purportedly have permitted him only to “adequately argu[e] for a new trial,” R. Vol. 1, Doc. 72 at 1 — were meant to inform the more specific Confrontation Clause arguments in the motion for new trial. Thus, the post-trial motion for inspection did not specifically apprise the district court of Robinson’s particular due process claim.
For his part, Robinson does not suggest his pre- and post-trial motions properly raised his due process claim. Instead, he argues that two cases he submitted to the district court prior to trial, United States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983), and Chnapkova v. Koh, 985 F.2d 79 (2d Cir.1993), “placed the [district court] on notice” of his due process claim. Aplt. Reply Br. at 2. These cases, however, are off the mark. Lindstrom was decided under the Confrontation Clause and Chnapkova under the relevancy standards of Federal Rule of Evidence 403. Neither case squarely presents due process arguments or even suggests due process rights would be infringed if the court refused to provide Robinson access to the Cl’s psychiatric records.
In sum, the record shows that Robinson’s specific objections to the district court were based only on the Confrontation Clause. I would therefore review his due process claim for plain error. See United States v. Simpson, 152 F.3d 1241, 1250 (10th Cir.1998) (reviewing for plain error objections raised on different grounds in the district court); see also Redcorn, 528 F.3d at 744.
B. The Merits of the Due Process Claim
To support his due process claim, Robinson relies primarily on the standards set forth in Ritchie. In that case, a state trial court refused a defendant’s request to order a child services agency to disclose privileged records pertaining to the victim of sexual abuse. The state law privilege applicable to the records was qualified, and a “court of competent jurisdiction” could order disclosure. Ritchie, 480 U.S. at 44, 107 S.Ct. 989 (internal quotation marks omitted).
Employing a due process analysis, the Supreme Court held that the state court should have conducted an in camera review of the records, and should have re *1279 leased “material” evidence to defense counsel. Id. at 58, 107 S.Ct. 989. But the Court also held that the defendant had no due process right to personally examine the records, noting that “[although the eye of an advocate may be helpful to a defendant ... this Court has never held ... that a defendant alone may make the determination as to the materiality of [exculpatory evidence].” Id. at 59, 107 S.Ct. 989 (citations omitted).[1]
Here, in light of Ritchie, the district court did not commit plain error when it denied Robinson access to the Cl’s psychiatric records. “Under plain-error review, an error is ‘plain’ if it is ‘obvious or clear, i.e., if it is contrary to well-settled law.’ ” United States v. Smith, 413 F.3d 1253, 1274 (10th Cir.2005) (quoting United States v. Edgar, 348 F.3d 867, 871 (10th Cir.2003)). Any error by the district court in this case was not “contrary to well-settled law.”
It is important to recognize that the bulk of the Cl’s medical records — i.e., the portions containing the Cl’s statements to his psychiatrists and their statements regarding his treatment — were potentially subject to federal privilege. See Jaffee v. Redmond, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (“[W]e hold that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure____”). In this circuit, the privilege has few exceptions, and none were plainly applicable to the facts of this case. See United States v. Glass, 133 F.3d 1356, 1360 (10th Cir.1998) (applying the Jaffee rule in a criminal case, and creating a narrow exception to the rule where “disclosure [is] the only means of averting [imminent] harm”); cf. United States v. Chase, 340 F.3d 978, 992 (9th Cir.2003) (refusing to recognize a dangerous-patient exception to the Jaffee rule). Indeed, we have noted that the federal psychotherapist privilege “is not rooted in any constitutional right of privacy but in a public good which overrides the quest for relevant evidence; the privilege is not subject to a balancing component.” Glass, 133 F.3d at 1358 (emphasis added) (internal quotation marks omitted).
Given these circumstances, the district court exercised caution and judgment despite the thorny legal issues that emerged on the eve of trial. And even though Robinson failed to properly raise his Ritchie claim, the court carefully followed the procedure approved in Ritchie by conducting an in camera review of the Cl’s psychiatric records, informing the parties of the Cl’s psychiatric diagnosis, hearing arguments from the parties (on several occasions), and determining that the records should remain confidential. See United States v. Haworth, 168 F.R.D. 660 (D.N.M. 1996) (conducting an analysis under Ritchie and determining that a witness’s privileged psychotherapist records should not be disclosed to defendants).
Moreover, the court’s decision comports with the Ritchie materiality requirement. Under Ritchie, only material evidence— i.e., that which “probably would have changed the outcome of ... trial” — need be disclosed to the defense. 480 U.S. at 58, 107 S.Ct. 989. After reviewing the records in camera, interviewing a doctor from Osawatomie State hospital, and hear *1280 ing arguments from the parties, the district court determined the Cl’s psychiatric records contained only irrelevant, prejudicial, or otherwise inadmissible evidence. As explained below in the context of my Confrontation Clause harmlessness analysis, the district court’s ruling was sound; disclosure of the records would have had little effect on the outcome of Robinson’s trial.
In short, the district court’s refusal to permit Robinson to inspect the Cl’s psychiatric records was not plain error and cannot be the basis for reversal.
II. Confrontation Clause Claim
Although I would hold that the district court did not run afoul of the Due Process Clause in maintaining the confidentiality of the Cl’s psychiatric records, I agree with the majority that the district court erred when it prohibited Robinson from inquiring into the Cl’s prescription medications at trial. In doing so, the court improperly “preclude[d] an entire relevant area of cross-examination” and therefore infringed Robinson’s Confrontation Clause rights. United States v. Montelongo, 420 F.3d 1169, 1175 (10th Cir.2005) (quoting Parker v. Scott, 394 F.3d 1302, 1316 (10th Cir. 2005)). I do not, however, agree that the district court erred in prohibiting Robinson from questioning the Cl regarding his mental health. That ruling was based on an analysis under Federal Rule of Evidence 403 and was not an abuse of discretion. Moreover, I would hold that any error committed by the district court in hmiting cross-examination on the Cl’s prescription medications was harmless.
A. Mental Health
In denying Robinson the opportunity to question the Cl regarding his mental health, the court reasoned that any inquiry into the defendant’s mental state was irrelevant, would have introduced collateral issues at trial, and would have been more prejudicial than probative under Federal Rule of Evidence 403. Indeed, the court characterized Robinson’s efforts to use this evidence against the Cl as a mere “scurrilous effort to discredit” the CL R. Vol. 2, Doc. 93 at 10.
Though the Cl’s psychiatric problems might have provided Robinson ammunition to damage the Cl’s credibility before the jury, the court’s decision to exclude questions regarding the Cl’s mental state does not automatically establish a Confrontation Clause violation. Even when a defendant’s Confrontation Clause rights are implicated, “the presentation of evidence ... ‘must comply with established rules of evidence and procedure.’” United States v. Turner, 553 F.3d 1337, 1349 (10th Cir. 2009) (quoting United States v. Solomon, 399 F.3d 1231, 1239 (10th Cir.2005)), cert. denied, - U.S. -, 129 S.Ct. 2446, 174 L.Ed.2d 237 (2009). I discern no error in the district court’s reliance on Rule 403 to exclude cross-examination with respect to the Cl’s mental health, particularly in light of the court’s in camera review of the medical records and examination of the psychiatrist. Cf. United States v. Hinkle, 37 F.3d 576, 579 (10th Cir.1994).
Like the district court in Hinkle, the trial court below “saw nothing in [the Cl’s medical] file or in the testimony given by the psychiatrist in camera that suggested that the witness’ credibility or perceptive capabilities were impaired.” Id.; see also United States v. Gonzalez-Sanchez, 825 F.2d 572, 586 (1st Cir.1987) (“The trial court found that [the witness] suffered no mental incapacity that would affect his ability to testify....”). Additionally, here, the district court was concerned the jury might improperly discount the Cl’s testimony merely because of his recent mental health problems. This is a valid consideration under Rule 403. See United States v. Sasso, 59 F.3d 341, 348 (2d Cir.1995); cf. Hinkle, 37 F.3d at 579 n. 3 (noting that the *1281 district court believed the defendant was merely “attempt[ing] to stigmatize the witness before the jury as a psychiatric patient”); United States v. Butt, 955 F.2d 77, 83-84 (1st Cir.1992) (noting that a witness’s psychiatric history is “potentially stigmatizing” and therefore may be excluded from evidence). Robinson’s counsel was informed of the Cl’s psychiatric diagnosis and was given the opportunity to argue to the district court why cross-examination on the mental health issue was relevant and not overly prejudicial under Rule 403. Given its careful treatment of the issue, I cannot say the district court abused its discretion. See United States v. McCarty, 82 F.3d 943, 950 (10th Cir.1996).
In these circumstances, I would hold that the district court’s decision to foreclose cross-examination on the Cl’s mental health did not exceed the “wide latitude” trial courts are afforded in the context of Confrontation Clause challenges. Turner, 553 F.3d at 1349 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
B. Prescription Medications
But the district court did not confine its cross-examination ruling to questions about the Cl’s mental health. Robinson was also prohibited from inquiring into the Cl’s prescription medications or even demonstrating why such cross-examination would have been appropriate. Though the district court did not explicitly state that any inquiry into the Cl’s psychiatric medications was off limits, defense counsel was understandably hesitant to delve into the issue.[2]
As the majority points out, a witness’s use of drugs or medications is relevant to credibility. See United States v. Jones, 213 F.3d 1253, 1261 (10th Cir.2000) (suggesting prescription medications might affeet a witness’s “memory, perception, or comprehension”). Thus, I agree with the majority that the district court’s apparent prohibition on cross-examination regarding the Cl’s use of psychiatric medications improperly “preelude[d] an entire relevant area of cross-examination,” denying Robinson an opportunity to impeach the Cl’s memory and perceptive faculties at the time of trial. Montelongo, 420 F.3d at 1175 (quoting Parker, 394 F.3d at 1316).
The issue could have been avoided had the district court allowed Robinson to conduct a voir dire of the Cl or, at minimum, allowed the parties to present arguments outside the presence of the jury regarding any medications the Cl was taking at the time of trial. Robinson could then have attempted to demonstrate why the medications were relevant to the Cl’s credibility. The prosecutor likely would have responded that the evidence was irrelevant or would have prejudiced the jury against the Cl. The court then could have made an informed ruling on the record regarding the admissibility of the evidence as it did with respect to the Cl’s mental health. But there is no such ruling on the record before us.
Thus, this case stands in contrast to other cases involving court-imposed limitations on cross-examination with respect to a witness’s mental health and psychiatric medications. On several prior occasions, we have upheld various restrictions on cross-examination, but usually some inquiry into the witness’s mental state was allowed. See United States v. LaVallee, 439 F.3d 670, 692 (10th Cir.2006) (concluding that although the district court denied discovery of a witness’s privileged medical records, the court “did not appear to limit the scope of questions that the defendants could ask [the witness] on cross-examination” and therefore did not infringe the *1282 defendants’ Confrontation Clause rights); Jones, 213 F.3d at 1261 (holding that the district court’s prohibition of cross-examination on a witness’s mental health was permissible because the court allowed such examination outside the presence of the jury); Hinkle, 37 F.3d at 579 (holding that because the district court did not “rule out all testimony regarding the witness’ mental health,” it did not violate the Confrontation Clause when it excluded evidence that the witness was seeing a psychiatrist).
In sum, our precedent suggests the district court should have granted Robinson greater latitude in cross-examining the Cl — or at least granted him the opportunity to argue that cross-examination was warranted — regarding the medications the Cl was taking to treat his psychiatric problems.
C. Harmless Error
Notwithstanding the district court’s error, “the constitutionally improper denial of a defendant’s opportunity to impeach a witness ..., like other Confrontation Clause errors, is subject to ... harmless-error analysis.” Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431. Because the error is of a constitutional dimension, “the Government bears the burden to demonstrate that the error was harmless beyond a reasonable doubt.” Montelongo, 420 F.3d at 1176. In conducting a harmless-error analysis we consider various factors, including “the importance of the witness’ testimony in the prosecution’s case, the cumulative nature of the testimony, the presence or absence of corroborating or contradictory testimony, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution’s case.” United States v. Toles, 297 F.3d 959, 968 (10th Cir.2002) (citing Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431). Based on my review of the record, I disagree with the majority’s conclusion that Robinson’s verdict is “not worthy of confidence.” In my view, the relevant factors require a conclusion of harmlessness.
Robinson’s central argument on appeal is that the Cl lied about the firearm transaction. But most of the Cl’s testimony was corroborated; the only uncorroborated portion of the testimony addressed the events that took place inside Robinson’s house during the few moments of the controlled buy. As a consequence, Robinson falls back on a theory that strains credulity — he argues the lack of corroboration on this subject is critical, because it leaves open the possibility the Cl “left the gun with [Robinson] the night before [the controlled buy] and merely picked it up when the ATF took him to the residence.” Aplt. Reply Br. at 8. The jury heard the same theory during closing arguments and rejected it, and I am persuaded additional cross-examination would not have made a difference in bolstering this theory.
First, though the Cl’s testimony was central to the government’s case, it was largely corroborated by testimony from the ATF agent. Furthermore, the ATF agent testified he saw an unidentified black male (Robinson is African-American) invite the Cl into Robinson’s house, which suggests, in the very least, that the Cl was with Robinson — and not alone — in the house at the time of the controlled buy. And despite its rough quality, the audio recording of the controlled buy at least minimally corroborated that the Cl had a conversation with Robinson regarding the illegal pistol’s missing serial number.
Second, Robinson failed to present any witnesses to contradict the important elements of the Cl’s story. Instead, Robinson called three witnesses to challenge the Cl’s recollection of the number of children present in the Robinson home at the time of the controlled buy, in an attempt to undermine the Cl’s credibility. But the Cl never testified he saw the children at the time — he maintained that he merely *1283 heard the children playing in a back room during the transaction. Thus, nothing in the record suggests the Cl’s story was inaccurate.
Third, the defense’s theory — that the Cl was lying and had planted the gun to frame Robinson — would not have been bolstered by admission of evidence regarding the Cl’s psychiatric medications. The Cl was not taking the medications at the time of the controlled buy. He may have been under the influence of illegal drugs, but Robinson’s counsel elicited this information during cross-examination and could have more fully explored the Cl’s drug abuse had he chosen to do so. That the Cl’s medications may have affected his memory at the time of trial does not shed any light on whether he lied about the transaction to federal agents or whether he intended to frame Robinson for the crime.
Fourth, Robinson was given ample opportunity to cross-examine the Cl on various other grounds, including his motive for becoming a confidential informant, the payments and favors he received from the ATF, his criminal history, and his drug use. For example, the cross-examination revealed the Cl had a criminal history, both as a juvenile and as an adult, and he became a confidential informant only after he was “arrested with a gun and some drugs by the Topeka Police Department.” R. Vol. 2, Doc. 93 at 96. The Cl also admitted the ATF paid him for his services and promised not to file criminal charges against him. Furthermore, after the Cl became an informant, the ATF twice intervened when he had “scrapes” with the law, ensuring no charges were filed against him. R. Vol. 2, Doc. 93 at 99-101. Finally, the Cl admitted he had smoked marijuana on various occasions — including the night before the controlled buy — in violation of his agreement with the ATF.
This cross-examination revealed to the jury the Cl’s potential bias in favor of the government and provided Robinson the opportunity to question the Cl’s credibility. The district court’s limitations on cross-examination must be viewed in light of the fact that Robinson was allowed an otherwise searching cross-examination of the Cl in many respects. In short, Robinson effectively challenged the Cl’s motive, bias, and credibility even without the information contained in the mental health records.
Finally, the government’s case against Robinson would have been strong even if Robinson had been allowed to cross-examine the Cl on his psychiatric medications. The government’s case consisted of testimony from the ATF agent, who carefully monitored the controlled buy and confirmed the information he received from the Cl; an audio recording of the controlled buy, which recorded the Cl discussing with Robinson the handgun’s missing serial number; and testimony from the Cl himself, who was under direct supervision of the ATF and had provided accurate information to the ATF on numerous prior occasions. Though the government’s case might have been tangentially weakened had Robinson been able to inquire into the Cl’s psychiatric medications during cross-examination, none of the government’s critical facts would have been contradicted.
Based on my review of the entire record, I am convinced that any error made by the district court in limiting cross-examination was harmless beyond a reasonable doubt. I would so hold, and would affirm Robinson’s conviction.
III. Conclusion
For the foregoing reasons, I respectfully dissent.

. Our decisions reaffirm Ritchie s holding that criminal defendants have no constitutional right to personally inspect privileged records containing potentially exculpatory evidence. See United States v. LaVallee, 439 F.3d 670, 692 (10th Cir.2006) (refusing to permit a criminal defendant to discover the privileged medical records of an adverse witness); Tapia v. Tansy, 926 F.2d 1554, 1559-60 (10th Cir.1991) (holding that a state trial court did not violate a defendant's constitutional rights when it reviewed an affidavit in camera, sealed the affidavit, and denied the defendant access to the affidavit).

. On the other hand, defense counsel did not ask the court whether its ruling indeed barred any reference to medications the Cl was taking at the time of trial.